974 So.2d 340 (2008)
STATE of Florida, Petitioner,
v.
Moroni LOPEZ, Respondent.
No. SC05-88.
Supreme Court of Florida.
January 10, 2008.
*343 Bill McCollum, Attorney General, Robert R. Wheeler, Bureau Chief Criminal Appeals, and Felicia A. Wilcox, Assistant Attorneys General, Tallahassee, FL, for Petitioner.
Nancy A. Daniels, Public Defender, and Jamie Spivey, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Respondent.
Paula S. Saunders, Office of the Public Defender, Tallahassee, Florida, and Michael Robert Ufferman, Tallahassee, FL, for the Florida Association of Criminal Defense Lawyers, as Amicus Curiae.
QUINCE, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Lopez v. State, 888 So.2d 693 (Fla. 1st DCA 2004). The district court certified that its decision is in direct conflict with the decision of the Fifth District Court of Appeal in Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004), review granted, No. SC04-1823 (Fla. Sept. 8, 2005). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons set forth below, we approve the decision of the First District Court of Appeal in Lopez that a prior discovery deposition of a declarant by the defendant's counsel did not qualify as a "prior opportunity for cross-examination" under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and that the admission of this testimonial statement at trial violated the defendant's confrontation rights. We also disapprove the decision of the Fifth District in Blanton to the extent that it conflicts with this opinion.[1]

STATEMENT OF THE CASE AND FACTS
Moroni Lopez was convicted of possession of a firearm by a convicted felon. The evidence presented against Lopez was a hearsay statement made to a police officer by a person who stated that he had observed Lopez in possession of a firearm.
Police officers were dispatched to an apartment complex in Tallahassee to investigate a reported kidnapping and assault. The alleged victim, Hector Ruiz, met the police officers in the parking lot and told Officer Mel Gaston that a man had abducted him in his own car at gunpoint. Ruiz appeared upset and nervous as he spoke to the officer. Ruiz surreptitiously indicated that Lopez, who was also standing in the parking lot, was the person who had pointed a gun at him and forced him out of his home. Ruiz also told Officer Frank Arias that the gun used in his abduction was still in his car. The officers' search of the car revealed a loaded .38 caliber Smith & Wesson revolver under the front passenger seat.
Officer Arias advised Lopez of his rights and questioned him about the gun. Lopez admitted that the gun was his and explained that he had hidden the gun in Ruiz's car when he saw the police officers. The State charged Lopez with armed kidnapping, assault with a weapon, and possession of a firearm by a convicted felon. Lopez pled not guilty and sought discovery from the State. Ruiz appeared for a discovery deposition and was questioned by Lopez's defense counsel. At the time of trial, however, Ruiz was unavailable as a witness and the State was unable to serve him with a subpoena.
Just before trial, the State informed the court and defense counsel that it would be proceeding only on the charge of possession of a firearm by a convicted felon. The *344 defendant moved to exclude Ruiz's statement to Officer Gaston. At a hearing outside the presence of the jury, the prosecutor argued that the statement was admissible as an excited utterance. Defense counsel argued that the statement did not qualify under the excited utterance exception and also argued that the admission of the statement would violate Lopez's Sixth Amendment confrontation rights. The trial court ruled that the statement was admissible and allowed the officers to relate an edited version of the events. The jurors were not told about the alleged abduction, but did hear Ruiz's statement to Officer Gaston identifying Lopez as the person who had the revolver.
Lopez testified in his own defense. He denied possession of the firearm and repudiated the admission attributed to him by Office Arias. Lopez also stated his belief that he had been set up by Ruiz and his employer Mario Morqucho in retaliation for sexual battery complaints he had made against them. The jury found Lopez guilty with a special finding that he was in actual possession of the firearm. Lopez was sentenced to three years in the Department of Corrections with a three-year mandatory minimum term.
On appeal, the First District Court of Appeal concluded that the admission of Ruiz's testimonial statement without an opportunity for cross-examination violated Lopez's confrontation rights. Lopez v. State, 888 So.2d 693, 695 (Fla. 1st DCA 2004). The First District agreed with the trial court that Ruiz's statement was an excited utterance because the abduction at gunpoint was a startling event, Ruiz made the statement in question only six to eight minutes after the crime had been reported, and Ruiz appeared to be under the stress of the event when he made the statement as he appeared nervous and was speaking rapidly. Id. at 696-97. The First District also concluded that Ruiz's "excited utterance" identifying Lopez as the suspect in response to Officer Gaston's questioning at the crime scene was a testimonial statement because Ruiz knew that this was a form of accusation that would be used against the suspect. Id. at 699-700. The First District concluded that a prior discovery deposition of Ruiz by Lopez's counsel did not qualify as a "prior opportunity for cross-examination" under Crawford. Id. at 700-01. Finally, the First District certified conflict with the Fifth District's decision in Blanton, 880 So.2d at 798, on the discovery deposition issue. Lopez, 888 So.2d at 701-02.

ANALYSIS
The State contends that the victim's statement was not testimonial and thus was outside the scope of Crawford v. Washington. The State also argues that even if the victim's statement was testimonial, the Confrontation Clause was satisfied when Lopez's counsel conducted a pretrial deposition of the witness who did not testify at trial. Lopez, on the other hand, asserts that the victim's statement was testimonial in violation of Crawford. Lopez further asserts that the pretrial deposition here did not satisfy his constitutional right to confront his accuser and that there was no opportunity for cross-examination because the witness did not testify at trial.

Was the Victim's Statement Testimonial under Crawford?

The trial court admitted Ruiz's statement under the excited utterance hearsay exception in section 90.803(2), Florida Statutes (2006). Section 90.803(2) authorizes the admission of "[a] statement or excited utterance relating to a startling event or, condition made while the declarant was under the stress of excitement *345 caused by the event or condition," notwithstanding the general prohibition against the admission of hearsay. The rationale for this exception is that a statement made during a period of excitement is likely to be more reliable than a statement made after a period of reflection. See Evans v. State, 838 So.2d 1090 (Fla.2002). A person who is startled and excited does not have the capacity to analyze the facts or to make a conscious misrepresentation of the event. A statement made during a period of excitement is therefore less likely to be contrived.
With these guiding principles, the trial judge could properly conclude that the statement at issue was an excited utterance because Ruiz's abduction at gunpoint was obviously a startling event and he appeared to still be under the stress of that event when he made his statement to the officer, who described Ruiz as being nervous, shaken, and speaking rapidly. However, the mere fact that evidence meets the requirements of an exception to the hearsay rule does not necessarily mean it is admissible as evidence. The statement might be inadmissible for other reasons, including that the use of the statement would violate the defendant's constitutional right of confrontation. The Sixth Amendment provides that Tin all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right guaranteed by this part of the Sixth Amendment differs from the kind of protection that is afforded by state evidentiary rules governing the admission of hearsay.
The standard for determining whether the admission of a hearsay statement against a criminal defendant violates the right of confrontation was modified by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Before Crawford, the issue was controlled by Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held that a hearsay statement could be admitted in a criminal trial without violating the right of confrontation if it was shown that the declarant was unavailable and the out-of-court statement bore adequate indicia of reliability. This test focused on the reliability of the statement. As explained in Roberts, a statement had adequate indicia of reliability if it either fell within a firmly rooted hearsay exception or if it bore "particularized guarantees of trustworthiness." Id.
In Crawford, the Supreme Court dispensed with the Roberts reliability analysis for testimonial hearsay statements and held the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. The Court emphasized that if "testimonial" evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68, 124 S.Ct. 1354. "Only [testimonial statements] cause the declarant to be a `witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Id. Thus, we must initially determine whether the statement at issue in the instant case was testimonial.
While Crawford did not establish a precise definition of the term "testimonial," the Supreme Court did provide some guidance, *346 holding that, at a minimum, statements are testimonial if the declarant made them "at a preliminary hearing, before a grand jury, or at a former trial; and [in) police interrogations." Crawford, 541 U.S. at 68, 124 S.Ct. 1354. Since Crawford was decided, courts have come to different conclusions on the question of whether statements made in response to interrogation during the early stages of an investigation are testimonial. The Supreme. Court, however, recently addressed this question in Davis, providing guidance for our analysis of the nature of the victim's statement here.
Davis further clarified Crawford's definition of "testimonial," analyzing two separate scenarios involving witness statements. Davis actually involved two separate cases decided by the Washington and Indiana Supreme Courts, State v. Davis, 154 Wash.2d 291, 111 P.3d 844 (2005), and Hammon v. State, 829 N.E.2d 444 (Ind.2005). In both cases, the trial courts admitted statements made by victims of domestic battery and the defendants argued that the admission of the statements, in the absence of the declarant's testimony at trial, violated their Sixth Amendment right to confrontation. In Davis, the relevant statements were made to a 911 emergency operator as the declarant was actually being attacked by the defendant. The declarant identified Davis as the assailant. In Hammon, the relevant statements were made to police officers who had responded to a domestic dispute call. The declarant recounted to the police the details of a previous attack by Hammon. The Supreme Court concluded that the statements made during the 911 call in Davis were nontestimonial, while the statements to the police officers in Hammon were testimonial. As explained by the Supreme Court, the distinction rests on the primary purpose of the interrogation in each instance. 126 S.Ct. at 2273-74.
In Davis, the questioning by the 911 operator was to enable the responding officers to meet an ongoing emergency. The Supreme Court noted the following circumstances in Davis: the declarant was speaking about events as they were actually happening; the declarant was facing an ongoing emergency and made the 911 call in order to seek help against a bona fide physical threat; the elicited statements were crucial to resolving the ongoing emergency (i.e., the 911 operator asked who was attacking the caller, whether the attacker was using a weapon, and whether the attacker had been drinking); and the declarant was giving frantic answers over the phone in the midst of hectic events and an unsafe environment. 126 S.Ct. at 2276-77.
In contrast, the Supreme Court concluded that the primary purpose of the interrogation in Hammon was to establish or prove past events potentially relevant to later criminal prosecution. The Supreme Court noted very different circumstances surrounding the interrogation in Hammon: there was no emergency in progress when the officers arrived; the declarant was alone on the front porch and told the officers that she was fine and in no immediate danger; the officer questioned the declarant in a separate room about "what had happened"; the declarant delivered a narrative of past events removed in time from the danger she described; and the officer asked the declarant to execute a written affidavit in order to establish the events that had occurred previously. The Supreme Court described these statements in Hammon as "an obvious substitute for live testimony, because they do precisely what a witness does on direct examination; they are inherently testimonial." 126 S.Ct. at 2278-79.
*347 From these two scenarios, the Davis Court established a general rule for determining whether statements are testimonial or nontestimonial:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Davis, 126 S.Ct. at 2273-74.
Applying this analysis to the instant case, we conclude that Ruiz's statement to Officer Gaston was testimonial, and is therefore within the scope of Crawford. The circumstances here indicate that there was no ongoing emergency at the time Officer Gaston questioned Ruiz. Officer Gaston arrived at the scene of the crime six to eight minutes after the crime had been reported. Lopez, 888 So.2d at 697. At the time Officer Gaston approached him, Ruiz was standing in a parking lot about twenty-five yards away from Lopez, separated from his alleged abductor in much the same way the declarant in Hammon was separated from defendant Hammon when the police arrived. Id. at 695. A short time later, Ruiz revealed that the gun that was allegedly used in his abduction was under the front passenger seat of his car, presenting no immediate danger at the time Officer Gaston arrived. Id. Even though the questioning of Ruiz was not as formal as it may have been in Hammon, it seems clear that the "primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution." Davis, 126 S.Ct. at 2274. Therefore, the statement in Lopez was testimonial.

Was the Discovery Deposition a Prior Opportunity to Cross-Examine?
Because we have determined Ruiz's statement to Officer Gaston was testimonial, it is subject to analysis under Crawford. In order for a testimonial statement to be admissible under Crawford, the following two requirements must be met: the declarant must be unavailable to testify at trial and the defendant must have had a prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 68, 124 S.Ct. 1354. The First District properly concluded that the first requirement of unavailability was met because the parties were not able to serve Ruiz with a subpoena for trial because he apparently had absconded. Lopez, 888 So.2d at 700. Thus, the remaining question is whether the discovery deposition of Ruiz by defense counsel satisfies the requirement of an "opportunity to cross-examine" under Crawford.
The First District concluded that the discovery deposition of Ruiz did not satisfy Crawford's cross-examination prong. Lopez, 888 So.2d at 701-02. The First District noted a number of reasons why a discovery deposition does not satisfy the requirement of an opportunity for cross-examination. First, Florida Rule of Criminal Procedure 3.220(h) was not designed as an opportunity to engage in adversarial testing of the evidence against the defendant, nor is the rule customarily used for the purpose of cross-examination. Instead, the rule is used to learn what the testimony will be and attempt to limit it. Second, a discovery deposition is not intended as an opportunity to perpetuate testimony for use at trial. Third, the defendant is not entitled to be present during a discovery deposition pursuant to rule 3.220(h). Id. We agree.
*348 In examining the history of the Sixth Amendment's Confrontation Clause in Crawford, the Supreme Court explained that it was based on the English common law tradition of "live, testimony in court subject to adversarial testing." Crawford, 541 U.S. at 43, 124 S.Ct. 1354. The Supreme Court explained that this tradition was in contrast to the civil law that "condone[d] examination in private by judicial officers." Id. The Supreme Court further explained that the proposed federal Constitution did not contain a right of confrontation, although many of the states' declarations of rights did. Id. at 48, 124 S.Ct. 1354. In response to general criticism of this omission, the First Congress included the Confrontation Clause in the proposal that became the Sixth Amendment. Id. at 48-49, 124 S.Ct. 1354. Early state decisions involving this right held that depositions or other prior testimony could only be admitted against an accused if he was present and had an opportunity to cross-examine the witness when the testimony was given. Id. at 49, 124 S.Ct. 1354. The Supreme Court also explained that a "prior opportunity to cross-examine" was both a "necessary" and "dispositive" requirement to the admission of testimonial statements. Id. at 55-56, 124 S.Ct. 1354. The Supreme Court stated most emphatically that "under no circumstances" shall the defendant be deprived of "seeing the witness face to face and subjecting him to the ordeal of a cross-examination." Id. at 57, 124 S.Ct. 1354 (quoting Mattox v. United States, 156 U.S. 237, 244, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). Further, the Supreme Court explained that the Confrontation Clause provides a procedural, not a substantive, guarantee. Id. at 61, 124 S.Ct. 1354. "It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Id. (emphasis added).
In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court explained that the right of the accused to be confronted with the witnesses against him is more than being allowed to confront the witnesses physically. The primary interest secured by confrontation is the right of cross-examination. The Supreme Court stated:
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.
Id. at 316-17, 94 S.Ct. 1105. Thus, it stands to reason that the prior opportunity to cross-examine required by Crawford must serve the same functions. In Ohio v. Roberts, 448 U.S. 56, 70, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court addressed the adequacy of the defendant's examination of a declarant at an adversary preliminary hearing.[2] The Supreme Court noted that the testimony from a preliminary hearing was properly admitted in Roberts because the defendant had examined *349 the witness at that hearing. Id. Thus, we can discern that the requirement for confrontation is satisfied where the opportunity is exercised, is more than "de minimis," and is "the equivalent of significant cross-examination." Roberts, 448 U.S. at 70, 100 S.Ct. 2531; see also John F. Yetter, Wrestling with Crawford v. Washington and the New Constitutional Law of Confrontation, Fla. B.J., Oct. 2004, at 26, 31. In light of Crawford, the Colorado Supreme Court recently held that its preliminary hearings, which are usually restricted to a determination of probable cause and limit the opportunity for cross-examination, "do[ ] not provide an adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause requirements." People v. Fry, 92 P.3d 970, 978 (Colo.2004).
The State contends that Florida's rules of criminal procedure provide an adequate opportunity for cross-examination through the opportunity to conduct a discovery deposition and to perpetuate the testimony of a witness through a deposition. Florida Rule of Criminal Procedure 3.220(h)(1)(A) provides that after the charging document has been filed the defendant may take the deposition of any witness listed by the prosecutor as a Category A witness under rule 3.220(b)(1)(A)(i).[3] Rule 3.220(h)(7) provides that a defendant is not to be physically present at a deposition except by stipulation of the parties. The court can also order the defendant's physical presence upon a showing of good cause. As explained in the committee notes, "[c]ases requiring the defendant's presence are the exception rather than the rule." Fla. R.Crim. P. 3.220 comm. note (1989). The Florida Supreme Court Commission on Criminal Discovery also explained that it was a common complaint that "the presence of the defendant intimidates [rape and child abuse] victims" and this "trauma to the victim surpasses the benefit to the defense of having the defendant present at the deposition." Id. Because the Commission found no right of a defendant to attend a deposition other than that granted by the rules of discovery, the Commission stated its belief that "no such right should exist in those cases," i.e., rape and child sexual abuse cases. Id. Thus, discovery depositions do not function as the equivalent of the cross-examination opportunity envisioned by Crawford.
Professor Yetter pointed out this problem in his article dealing with the constitutional law of confrontation post-Crawford. He noted that the 1989 amendment to the discovery rule prohibits the presence of a defendant at discovery depositions without a court order or stipulation of the parties. Yetter, supra, at 30. Professor Yetter cautioned that "if a discovery deposition is to have any chance of substitution for at-trial confrontation, the prosecution will at least have to stipulate to the attendance of the defendant, who, in turn, will have to be given the opportunity to attend." Id.
Additionally, the purpose of a discovery deposition is at odds with the concept of a meaningful cross-examination. Often discovery depositions are taken for the purpose of uncovering other evidence or revealing other witnesses. As this Court has explained, the fundamental distinctions between *350 depositions taken pursuant to Florida Rule of Criminal Procedure 3.190(j) (Motion to Take Deposition to Perpetuate Testimony) and those taken under rule 3.220 are:
Depositions taken pursuant to rule 3.190 are specifically taken for the purpose of introducing those depositions at trial as substantive evidence. Depositions taken pursuant to rule 3.220, on the other hand, are for discovery purposes only and, for a number of reasons, assist in shortening the length of trials. How a lawyer prepares for and asks questions of a deposition witness whose testimony may be admissible at trial as substantive evidence under rule 3.190 is entirely different from how a lawyer prepares for and asks questions of a witness being deposed for discovery purposes under rule 3.220. In effect, the knowledge that a deposition witness's testimony can be used substantively at trial may have a chilling effect on a lawyer's questioning of such a witness.
State v. Green, 667 So.2d 756, 759 (Fla. 1995). A defendant cannot be "expected to conduct an adequate cross-examination as to matters of which he first gained knowledge at the taking of the deposition." State v. Basiliere, 353 So.2d 820, 824-25 (Fla.1977). This is especially true if the defendant is "unaware that this deposition would be the only opportunity he would have to examine and challenge the accuracy of the deponent's statements." Id. at 824.
Finally, a deposition that is taken pursuant to rule 3.220 is only admissible for purposes of impeachment and not as substantive evidence. See Rodriguez v. State, 609 So.2d 493 (Fla.1992) (ruling that only depositions taken pursuant to rule 3.190(j) may be used as substantive evidence because rule 3.220 makes no provision for the use of discovery depositions as substantive evidence); State v. James, 402 So.2d 1169, 1171 (Fla.1981) ("[D]iscovery depositions may not be used as substantive evidence in a criminal trial."); Basiliere, 353 So.2d at 823 (holding that deceased victim's discovery deposition was not admissible as evidence in defendant's trial because defendant was not present during the examination). Cf. State v. Green, 667 So.2d at 759 (ruling that an inconsistent discovery deposition given by a victim who recanted at trial was not admissible as substantive evidence under section 90.801(2)(a), Florida Statutes (1989), which provided that an inconsistent statement given under oath in a deposition was not hearsay).
Thus, the exercise of the right to take a discovery deposition under rule 3.220 does not serve as the functional substitute of in-court confrontation of the witness because the defendant is usually prohibited from being present, the motivation for the deposition does not result in the "equivalent of significant cross-examination," and the resulting deposition cannot be admitted as substantive evidence at trial. In light of the analysis above, we hold that the discovery deposition of Ruiz by defense counsel did not satisfy the requirement of an "opportunity to cross-examine" under Crawford. Because only one of the Crawford requirements was satisfied, Ruiz's statement to Officer Gaston was not admissible at trial.

Was the Error Harmless?
"It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review . . . and Crawford does not suggest otherwise." United States v. McClain, 377 F.3d 219, 222 (2d Cir.2004). Under Florida's harmless error analysis, the reviewing court must determine "whether there is a reasonable possibility *351 that the error affected the verdict." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). The State, as the beneficiary. of the error, has the burden to show that the error was harmless. Id. "If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful." Id.
Here, Lopez was charged with possession of a firearm by a convicted felon.[4]Lopez, 888 So.2d at 695. The evidence of this crime was Ruiz's statement to Officer Gaston identifying Lopez as the person who had the revolver[5] and Lopez's own statement to Officer Arias admitting that the revolver was his. Id. at 695-96. Lopez testified in his own defense and denied that he had possessed the firearm. Id. at 696. He also repudiated the admission attributed to him by Officer Arias that the gun was his, claiming that he had been set up by Ruiz and his employer in retaliation for complaints that Lopez had made against them. Id.
Without Ruiz's statement tying the gun to Lopez, the only evidence of the crime is Lopez's own statement to Officer Arias, which he denies ever making. While it is possible that the jury found Officer Arias more credible than Lopez, it cannot be said "beyond a reasonable doubt that the error did not affect the verdict." DiGuilio, 491 So.2d at 1139. "[T]he reviewing court must resist the temptation to make its own determination of whether a guilty verdict could be sustained by excluding the impermissible evidence and examining only the permissible evidence." Goodwin v. State, 751 So.2d 537, 542 (Fla. 1999). In light of this standard, the State has not met its burden of showing that the erroneous admission of Ruiz's statement was harmless error.

CONCLUSION
Therefore, we approve the decision of the First District Court of Appeal holding that the statement in this case was testimonial and that the discovery deposition was not a sufficient opportunity for cross-examination of the declarant. We disapprove of the Fifth District Court of Appeal's decision in Blanton on the discovery deposition issue to the extent that it is inconsistent with this opinion. We also remand this case for further proceedings consistent with this opinion.
It is so ordered.
LEWD, C.J., and WELLS, ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The Fifth District's decision in Blanton is also before this Court for review. See Blanton v. State, No. SC04-1823 (Fla. order granting review filed Sept. 8, 2005).
[2] Even though the Supreme Court receded from the Roberts reliability test in Crawford for testimonial hearsay statements, the Court cited Roberts with approval for the proposition that prior trial or hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine. See Crawford, 541 U.S. at 58, 124 S.Ct. 1354.
[3] Category A witnesses include: eyewitnesses; alibi witnesses and rebuttal to alibi witnesses; witnesses present when a recorded or unrecorded statement was made by a defendant or codefendant; investigating officers; witnesses known by the prosecutor to have exculpatory material information; child hearsay witnesses; and expert witnesses who have not provided a written' report and curriculum vitae or who are going to testify as to test results or give opinions subject to Frye v. United States, 293 F. 1013 (D.C.Cir.1923). See Fla. R.Crim. P. 3.220(b)(1)(A)(i).
[4] As noted above, the State also originally charged Lopez with armed kidnapping and assault with a weapon, but dropped those charges just before trial.
[5] As noted above, the trial court only admitted an edited version of Ruiz's statement identifying Lopez as the person who had the gun, but excluded the portion pertaining to the alleged abduction.