

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0447-06

**RODOLFO RANGEL, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### WICHITA COUNTY

COCHRAN, J., filed an opinion dissenting to the dismissal of the petitions for discretionary review, in which JOHNSON, J., joined.

### O P I N I O N

I respectfully dissent to the Court's action in dismissing the State Prosecuting Attorney's (SPA) and Appellant's petitions for discretionary review. Appellant raises important questions under the Sixth Amendment concerning the constitutionality of the child-videotape statute[1] in the post-*Crawford*[2] world. Other courts have cited *Rangel*, both

---

[1] TEX. CODE CRIM. PROC. art. 38.071.

[2] *Crawford v. Washington,* 541 U.S. 36 (2004); *see also Davis v. Washington*, 547 U.S. 813 (2006).

favorably and unfavorably, on this critical and recurring issue.[3]  Trial and appellate courts across the country are attempting to find a suitable accommodation between the defendant's constitutional right of confrontation and a young child's inability to testify fully and accurately in the courtroom setting.  We should not shirk our duty in resolving appellant's constitutional question and in providing guidance to the Texas bench and bar.

Appellant was convicted of various counts of aggravated sexual assault, indecency with a child, and attempted indecency with a child, involving his own or his wife's children.

---

[3] *See Morales v. State*, 222 S.W.3d 134, 145 (Tex. App.–Corpus Christi 2006, no pet.) (holding that where the trial court admitted the original "testimonial statement" videotape and two follow-up videotapes–in which the original interviewer asked unavailable child complainant interrogatory questions that had been submitted by defense counsel–under article 38.071, the follow-up out-of-court videotapes were a suitable substitute for actual cross-examination; concurrence cited *Rangel* as authority); *Wells v. State*, No. 11-05-00335-CR, ___ S.W.3d ___, 2007 Tex. App. LEXIS 8413, *9 (Tex. App.–Eastland Oct. 25, 2007, n.p.h.) (noting *Rangel* as among conflicting authorities); *Lollis v. State*, 232 S.W.3d 803, 809 (Tex. App.–Texarkana 2007, no pet.) (citing *Rangel* for the proposition that out-of-court statements by young children to investigators may be "testimonial" under *Crawford*); *Martinez v. State*, 236 S.W.3d 361, 371 (Tex. App.–Fort Worth 2007, pet. dism'd) (citing *Rangel* for the proposition that the child's hearsay statements were "testimonial" because "they were made two months after the emergency"); *Ficarro v. State*, No. 13-03-00439-CR, 2007 Tex. App. LEXIS 3166 (Tex. App.–Corpus Christi Apr. 26, 2007, pet. dism'd) (not designated for publication) (citing *Rangel* for the proposition that, under Art. 38.071, "the right to confrontation is not violated if the defendant is given the opportunity to submit written interrogatories to an unavailable witness."); *Hernandez v. State*, 946 So.2d 1270, 1284-85 (Fla. App. 2007) (citing *Rangel* and other authorities for the proposition that a child's out-of-court statements to investigators gathering evidence for possible prosecution are "testimonial" under *Crawford*); *State v. Bentley*, 739 N.W.2d 296, 300 (Iowa 2007) (citing *Rangel* and holding that child's out-of-court videotaped statements to police were testimonial and thus inadmissible under the Confrontation Clause); *State v. Henderson*, 160 P.3d 776, 785, 792 (Kansas 2007) (citing *Rangel* and holding that videotaped interview of child made by social worker was "testimonial" and violated Confrontation Clause because child did not testify at trial); *State v. Siler*, 876 N.E.2d 534, 543 (Ohio 2007) (citing *Rangel* and holding that admission of child's hearsay statements violated *Davis*).

Appellant's daughter, C.R., was six years old at the time of trial and was one of the three children he was found to have molested. Before trial, the State moved to admit an out-of-court forensic videotape of her statements taken under Article 38.071 in lieu of her live, in-court testimony. The appellant objected that using the videotape instead of live testimony violated both his right to confrontation and cross-examination. The trial court admitted the videotape, and C.R. did not testify. The court of appeals concluded that the forensic videotape was "testimonial" under *Crawford*, but that appellant's confrontation rights were not violated  because he could have submitted written questions for C.R. to answer during another out-of-court videotape session.[4]

We granted both appellant's and the SPA's petitions for discretionary review to decide whether the provisions of Article 38.071 allowing the admission of an out-of-court, *ex parte* videotaped statement by a child victim in lieu of that child's courtroom testimony violate a defendant's right of confrontation.[5]

I would hold that the child-videotape statute, Article 38.071, cannot be construed to

---

[4] *Rangel v. State,* 199 S.W.3d 523, 537 (Tex. App.–Fort Worth 2006) ("Having determined that C.R.'s statements were testimonial, C.R. was unavailable, and appellant had an opportunity to cross-examine C.R. through written interrogatories, we hold that appellant was not denied his Sixth Amendment right to confrontation.").

[5] Appellant's ground for review asks:
Whether appellant's Sixth Amendment rights were violated when the unavailable complainant's testimonial hearsay statements were admitted into evidence pursuant to statutory authority[?]

The S.P.A.'s ground for review asks:
Did the court of appeals apply the correct analysis to determine that the statement of a four-year-old child was testimonial under *Crawford v. Washington*?

allow the admission of out-of-court testimonial hearsay statements unless the child testifies at trial or the defendant has had a prior opportunity to cross-examine that child. To the extent that the statute cannot accommodate the demands of the Confrontation Clause as explained in *Crawford* and *Davis*, it violates appellant's Sixth Amendment rights.

I.

Debbie Adams, a Child Protective Services (CPS) investigator, began investigating appellant and his wife, Rosa, for possible child abuse in January of 2003. A week later, CPS removed the four children from appellant's home after one of them, G.T., told Ms. Adams that appellant has sexually abused her. The children were placed in foster care and received extensive counseling. Local law-enforcement officials were also notified, and Detective Julie Elliot began a criminal investigation into the alleged sexual abuse.

C.R. was appellant's biological daughter; she was four years old at the time she was placed in foster care. Cheryl Polly, a licensed professional counselor, was C.R.'s therapist. She testified that C.R. exhibited behaviors and symptoms consistent with being the victim of sexual abuse: She experienced nightmares, bed-wetting, sexual acting out, and defiance. According to Ms. Polly, C.R. said that appellant had inserted his finger into her genitals. By the time of trial, C.R.'s symptoms had largely subsided, but she tended to "dissociate" or "zone out" when she was asked about appellant's abuse.

Two months after the children had been removed from their parents' home, Camille Cleveland, a CPS investigator, conducted a videotaped "forensic interview" of C.R. at

"Patsy's House," the Wichita Children's Advocacy Center.  Ms. Cleveland explained that "it's a safe environment.  Alleged perpetrators or someone that has been accused of abusing a child. . . are not allowed. . . . There's also a few Child Protective Service workers housed there as well as some law enforcement officers so we can work the cases jointly."  Ms. Cleveland conducted the videotaped interview on March 26, 2003.  Detective Julie Elliott watched the interview.

Before trial, the State moved to admit the March 26th videotape instead of calling C.R. as a witness.  Appellant objected.  Therefore, the trial judge conducted a pretrial hearing to determine whether C.R. was an "unavailable" child witness and if the videotaped interview could be used in lieu of her in-court testimony under Article 38.071.[6]  At that hearing, Ms. Polly explained that "testifying live in the courtroom would be extremely traumatic" for C.R.  In her opinion, testimony via closed circuit TV would be less traumatic, but she still did not think that C.R. "would be able to do it because there would still be strangers involved in that."  The trial judge expressed his concern at attempting "to balance both sides of the potential right–harm to the child as well as the defendant's right to confrontation."  Appellant's counsel objected to the proposal as violating both his confrontation and cross-examination rights:

---

[6] As the proponent of the videotape, the State had the burden to demonstrate its admissibility.  TEX. R. EVID. 104(a).  *See Alvarado v. State*, 912 S.W.2d 199, 215 (Tex. Crim. App. 1995).  To the extent that the State failed to show the circumstances surrounding the videotaping to establish that it was a non-testimonial interview, it has failed in its burden of proof.

Well, Judge, not only are we dealing with a confrontation issue here, we're dealing with a cross-examination issue here. If the–if the State is allowed to introduce the videotape of [C.R.] and in connection with that there's a finding that she's unavailable, that essentially– that essentially puts me in this position. Camille Cleveland, a worker for CPS, who is clearly aligned with the State– you know, they may–they may take a position differently, but CPS is clearly aligned with the State in the prosecution of this case. Was allowed to interview in an environment subject only to the control of CPS, this one witness, present questions to this witness, receive the responses from that witness, and that is going to be the sum total testimony from this witness.

Counsel elaborated further: The procedure was unfair because CPS "had their chance, but I don't get mine. That's not fair to my client. And so what the State is proffering is saying, Judge, let us make our opportunity to get this five-year-old to tell the court and jury what we want to, but we won't give the opportunity to the defendant to in any meaningful way to rebut that."

The trial judge expressed his concern that appellant's attorney would "grill" C.R. and told him,

[Y]ou have a very deep voice. You come across very strongly. I mean I think taking all of that into consideration and the fact that–what I would primarily see I think is the fact that the doctor is going to testify that there were some very objective signs of abuse is what's been represented to me and that–I'm–I'm just not willing to put a four- or five-year-old kid through that right now based upon what I know. So I'm going to grant the State's motion.

The trial judge did state that he might reconsider his ruling during trial, once he had seen the videotape, "if it looks like she has been really guided by her nose down a path that she as a four- or five-year-old child would not go." Thus, during trial, appellant's attorney also objected to the admission of the videotape as not having been conducted by "a neutral

individual in a detached manner."[7]  That objection was also overruled.  The jury convicted

appellant of most, but not all, of the charges, and the trial court sentenced him to fifty years'

imprisonment on the aggravated sexual assault count involving C.R.[8]

On appeal, appellant claimed, *inter alia*, that Article 38.071 "is unconstitutional as

applied to him because it denies him his Sixth Amendment right to confrontation."[9]  As the

court of appeals said, "Appellant claims that C.R.'s videotaped interview is testimonial

hearsay, and that regardless of whether she was unavailable, he did not have a prior

opportunity to cross-examine her, so the interview is inadmissible."[10]  The court of appeals

agreed that C.R.'s videotaped statement was "testimonial" under *Crawford* and *Davis*,[11] and

that Article 38.071 "clearly contemplates that a child's statement admitted under [that article]

---

[7] *See* TEX. CODE CRIM. PROC. Art. 38.071, § 2(a) ("The recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter.").

[8] Appellant was also sentenced to fifty years' imprisonment on a separate aggravated sexual assault count, as well as twenty years' and ten years' imprisonment on other counts, none of which are at issue in the appeal before us.

[9] *Rangel*, 199 S.W.3d at 532.

[10] *Id.*

[11] *Id.* at 534-35 (stating that the videotaped interview was a "structured, formalized questioning of C.R. by the [CPS] investigator" and is was "more akin to the types of *ex parte* examination discussed and condemned in *Crawford* than a 'casual remark to an acquaintance' or even to initial statements made to a police officer responding to a call," and noting that C.R. was describing past events, not facing an emergency).

will function as *testimony* in a criminal case."[12]  However, the court of appeals then held that

Article 38.071 "provides an effective alternative to the traditional face-to-face confrontation

at trial" because it permits a defendant to submit written questions to the same person who

had originally interviewed the child and those questions could, with the approval of the trial

court, be posed to the child during a second videotaped interview.[13]

Thus, the primary question before this Court is whether written interrogatories are a

suitable  substitute for face-to-face confrontation and cross-examination in a criminal trial.

The answer is obvious to me:  No.  The submission of written interrogatories is no substitute

for in-court, sworn testimony, subject to the Sixth Amendment's requirements of

confrontation and cross-examination.

## II.

But before this Court could address appellant's contention that the court of appeals

erred by equating Article 38.071's interrogatory procedure with the type of confrontation and

cross-examination that the Sixth Amendment requires, it should address the SPA's cross-

---

[12] *Id.* at 535.

[13] *Id.* at 536-37; *see* TEX. CODE CRIM. PROC. art. 38.071, § 2(b). This section provides as
follows:
> If a recording is made under Subsection (a) of this section and after an indictment
> is returned or a complaint has been filed, by motion of the attorney representing
> the state or the attorney representing the defendant and on the approval of the
> court, both attorneys may propound written interrogatories that shall be presented
> by the same neutral individual who made the initial inquiries, if possible, and
> recorded under the same or similar circumstances of the original recording with
> the time and date of the inquiry clearly indicated in the recording.

petition which claims that the court of appeals erred in holding that C.R.'s videotaped

statement was "testimonial" under *Crawford*.  If C.R.'s statements were not "testimonial,"

then the Sixth Amendment has no applicability and the videotape, taken in accordance with

Article 38.071, is admissible under the statutory scheme as an exception to the hearsay rule.

## A.    C.R.'s Videotaped Interview Was a Testimonial Statement.

The SPA argues that C.R.'s videotaped interview is not a testimonial statement

because there is no evidence that C.R. herself viewed the answers as "testimony."  The SPA

posits that "a statement made by a child to a government employee is testimonial only if

made under circumstances that would cause a reasonable person of the same level of maturity

or intellectual functioning as the child to believe the statement will be used against the

defendant in a criminal prosecution."

After *Crawford*, but before *Davis*, this was an entirely defensible position because the

Supreme Court implied in *Crawford* that one should look at the expectations of the declarant

in determining whether he intended to make (or knew that he was making) a statement that

might be used as evidence in a future criminal proceeding.[14]  A few other state courts, in

---

[14] *See, e.g., Wall v. State*, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006) (stating that "whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant") (citing *Crawford*, 541 U.S. at 52, which set out one definition of "testimonial" statements as those "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" and *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) (stating that the decisive inquiry under a Confrontation Clause objection to hearsay is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime")).

post-*Crawford,* pre-*Davis* cases, had taken this approach with respect to statements of young children.[15] For example, the SPA cites *People v. Sharp,*[16] a Colorado child-abuse prosecution in which the child was interviewed on videotape by a forensic interviewer outside the presence of the police. The Colorado court of appeals stated that the "inquiry is whether, under the circumstances, the declarant intended to bear testimony against the accused. The determinative factor in this inquiry is the declarant's awareness or expectation that his or her statement may later be used at trial."[17] Under that test, the child's statements to the social worker were not testimonial.[18] However, the Colorado Supreme Court vacated and remanded *Sharp* after the United States Supreme Court changed the focus of the inquiry in *Davis v. Washington.*[19]

Under *Davis*, the primary focus in determining whether an out-of-court statement is "testimonial" is upon the objective purpose of the interview or interrogation, not upon the

---

[15] *See, e.g., People v. Vigil*, 127 P.3d 916, 924 (Colo. 2006) (holding, in child abuse prosecution, that child's statements to his doctor during medical exam were not testimonial; stating that, "[b]ased on our reading of *Crawford* and our review of other courts deciding this issue, we hold that the 'objective witness' language in *Crawford* refers to an objectively reasonable person in the declarant's position. Applying this test to the instant case, we determine that an objectively reasonable person in the declarant's position would not have believed that his statements to the doctor would be available for use at a later trial.").

[16] 143 P.3d 1047 (Colo. Ct. App. 2005).

[17] *Id.* at 1051.

[18] *Id.* at 1053.

[19] *People v. Sharp*, No. 06SC18, 2006 Colo. LEXIS 826 (Colo. Oct. 10, 2006) (not designated for publication).

declarant's expectations.[20] Thus, on remand, the Colorado court of appeals reversed Sharp's

conviction and remanded for a new trial because the objective purpose of the five-year-old

child's videotaped statement to a private forensic interviewer at a children's advocacy center

was to elicit statements from her to be used to prosecute the defendant in a later criminal

proceeding.[21] The court concluded that "such statements are inherently testimonial because

they 'are an obvious substitute for live testimony, because they do precisely what a witness

---

[20] *Davis v. Washington*, 547 U.S. at ___, 126 S.Ct. at 2273-74.  The Supreme Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id. See* Tom Lininger, *Reconceptualizing Confrontation after Davis*, 85 TEX. L. REV. 271, 280 (2006) ("The *Davis*. . . reasoning represents a conspicuous departure from the *Crawford* ruling. The *Crawford* Court had focused on the mindset of the declarant:  Did she give her statement under circumstances in which she could foresee the later prosecutorial use of her words?  The *Davis* opinion shifted the focus from the declarant's state of mind to the officers' purpose in questioning the declarant.") (footnote omitted).  As explained by one appellate court in the context of holding that a forensic interview of a small child by a social worker investigating child abuse was "testimonial" under the new *Davis* standard,

> the test is not how the *person questioned* views the interrogation, but what the purpose of the statement was as determined by an objective view of the circumstances. It makes more sense to ask whether an objective person, looking at the circumstances of the questioning, would consider the purpose of the statements as aiding the investigation. Was it a statement taken to address an immediate situation and see what is going on, like a mother's questioning of her child in this case and like the 911 emergency call in *Davis*, or was it a step taken in a police investigation after the action is over for purposes of aiding the investigation and potential prosecution, like Amy Hammon's statements to police in *Hammon*, and like [child victim's] statements to [social worker] during the interview?

*In the Interest of S.R.*, 920 A.2d 1262, 1267 (Pa. Super. Ct. 2007).

[21] *People v. Sharp*, 155 P.3d 577, 581 (Colo. Ct. App. 2006).

does on direct examination.'"[22]

Even before *Davis*, many courts had, like the Fort Worth Court of Appeals in the present case, followed the reasoning of *State v. Snowden,*[23] which had held that a statement is testimonial if it was "made *or elicited*" for the primary purpose of being used in a future criminal proceeding.[24]  In *Snowden*, a child-abuse prosecution involving the use of a videotaped statement made to a social worker at a juvenile center, the appellate court stated,

> [I]f a statement is made under such circumstances that would lead an objective person to believe that statements made in response to government interrogation later would be used at trial, the admission of those statements must be conditioned upon *Crawford*'s requirements of unavailability and a prior opportunity to cross-examine.[25]

Virtually all courts that have reviewed the admissibility of forensic child interview statements or videotapes after the *Davis* decision have found them to be "testimonial" and inadmissible unless the child testifies at trial or is presently unavailable but the defendant has had a prior opportunity for cross-examination.[26]

---

[22] *Id.* (quoting *Davis*, 547 U.S. at ___, 126 S. Ct. at 2278).

[23] 867 A.2d 314 (Md. 2005).

[24] *Id.* at 324.

[25] *Id.* at 330.  *See also United States v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005) (reversal where statement was made to "forensic interviewer" and child testified by closed circuit television); *People v. Sisavath*, 13 Cal. Rptr. 3d 753 (Cal. Ct. App. 2004) (child victim videotaped statement to forensic specialist inadmissible).

[26] *See, e.g., State v. Hooper*, No. 33826, __ P.3d ___, 2007 Ida. LEXIS 234 (Idaho December 24, 2007) (holding that videotaped statements the child victim made to nurse during interview at a sexual-trauma abuse-response center were testimonial because the circumstances surrounding the interview indicated that the primary purpose of the interview was to establish

Thus, the SPA's argument, though a cogent one,[27] does not stand up in a post-*Davis*

_____

past events potentially relevant to later criminal prosecution as opposed to meeting the child's medical needs); *State v. Henderson*, 160 P.3d 776 (Kan. 2007) (reversible error to admit three-year-old child's videotaped statement to social worker taken at government facility to gather evidence against alleged perpetrator when child did not testify at trial); *State v. Justus*, 205 S.W.3d 872 (Mo. 2006) (while social worker's job was to protect child, "primary purpose" of videotaped statements was to establish past events); *State v. Blue*, 717 N.W.2d 558 (N.D. 2006) (videotaped statement to forensic interviewer at child advocacy center inadmissible); *State v. Pitt*, 147 P.3d 940 (Ore. Ct. App. 2006) (reversible error to admit "testimonial" videotaped statements made by two children to social worker at child abuse assessment center when children did not testify at trial); *In the Interest of S.R.*, 920 A.2d 1262 (Sup. Penn. 2007) (reversible error to admit videotape of child victim's statement to forensic DHS interviewer for the purpose of investigation and possible prosecution when child did not testify at juvenile's adjudication hearing).

[27] In *Henderson*, the Kansas Supreme Court explicitly rejected the same argument as that made by the SPA in the present case:

> The amicus American Prosecutors Research Institute urges us to adopt an age-equivalent standard when determining whether a child's statement is testimonial. In support, it cites six studies evaluating what children understand about court and court-related concepts. Like the Court of Appeals, we expressly reject its specific argument that the videotaped interview was not testimonial solely because a 3-year-old child would have no reasonable expectation her statements will later be used at trial. We observe that its argument heavily relies upon the language from *Crawford*, 541 U.S. at 51-52, that describes testimonial statements as those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Indeed, the case upon which it principally relies, *State v. Bobadilla*, 709 N.W.2d 243 (Minn. 2006), was decided before *Davis*. We also observe that under the Institute's argument, the prosecution is allowed to have its cake and eat it too: The victim is too young to be competent to testify, as the district court found with 3-year-old F.J.I., but not too young to have her statement placed in evidence by the State with no attendant defense right to confront and cross-examine.

160 P.3d at 785. *See generally,* Myrna S. Raeder, *Comments on Child Abuse Litigation in a "Testimonial" World: The Intersection of Competency, Hearsay, and Confrontation*, 82 IND. L.J. 1009, 1023 (2007) (discussing the use of forensic interviews in child-abuse cases; stating that "*Crawford* appears to doom the use of multidisciplinary teams in child abuse as a way of introducing statements of children who do not testify" and lamenting that "*Crawford* has turned these best practices into a textbook for creating testimonial statements when the child does not testify."); Robert P. Mosteller, *Testing the Testimonial Concept and Exceptions to Confrontation: "A Little Child Shall Lead Them,"* 82 IND. L.J. 917, 957 (2007) (collecting post-*Davis* cases, using *Snowden* as the "archetype" situation, and stating, "Statements secured from

world.   Thus, I would agree that the court of appeals correctly determined that C.R.'s

videotaped statements were "testimonial."

**B.      The Submission of Written Interrogatories Are Not a Substitute for In-Court Confrontation and Cross-Examination.**

After holding that C.R.'s videotaped statement was testimonial and therefore

inadmissible unless she testified at trial (or appellant had had a prior opportunity to cross-

examine her), the court of appeals concluded that the submission of written interrogatories

provide "an effective alternative to the traditional face-to-face confrontation at trial."[28] If this

is so, virtually every defendant could happily videotape his unsworn pretrial statement and

then agree to answer the State's written interrogatories in another *ex parte* videotape in lieu

of testifying in court and submitting himself to cross-examination.[29] Such a procedure does

not inspire confidence, and it is no substitute for in-court cross-examination.

---

children for the explicit purpose of admission in court through a hearsay exception have been uniformly treated as testimonial.").

[28] 199 S.W.3d at 536.

[29] Justice Scalia, in his stinging dissent to *Maryland v. Craig*, 497 U.S. 836 (1990), upholding the use of a two-way closed-circuit television in taking the testimony of a traumatized child victim, made precisely this point:
> The Court's test today requires unavailability only in the sense that the child is unable to testify in the presence of the defendant.  That cannot possibly be the relevant sense.  If unconfronted testimony is admissible hearsay when the witness is unable to confront the defendant, then presumably there are other categories of admissible hearsay consisting of unsworn testimony when the witness is unable to risk perjury, un-cross-examined testimony when the witness is unable to undergo hostile questioning, etc. *California* v. *Green*, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970), is not precedent for such a silly system.

*Id.* at 866 (Scalia, J., dissenting).

In *Crawford* itself, the Supreme Court explained that the Confrontation Clause was based on the English common law tradition of "live testimony in court subject to adversarial testing."[30]  The Court noted that this tradition was in contrast to the European civil law that "condone[d] examination in private by judicial officers."[31]  The Supreme Court also noted that depositions or other prior testimony could be admitted against an accused only if he was present and had an opportunity to cross-examine the witness *during* that deposition or prior testimony.[32]  The Court explained that a "prior opportunity to cross-examine" was both a "necessary" and "dispositive" requirement to the admission of testimonial statements.[33]  And, in ringing terms, the Supreme Court declared that "under no circumstances" shall the defendant be deprived of "seeing the witness face to face and . . . subjecting him to the ordeal of a cross-examination."[34]  Finally, the Court explained that the Confrontation Clause provides a procedural guarantee:  "It commands, not that evidence be reliable, but that reliability be assessed in a particular manner:  by testing in the crucible of cross-examination."[35]

---

[30] 541 U.S. at 43.

[31] *Id.*

[32] *Id.* at 49.

[33] *Id.* at 55-56.

[34] *Id.* at 57 (quoting *Mattox v. United States*, 156 U.S. 237, 244 (1895)).

[35] *Id.* at 61.  In *Davis v. Alaska,* 415 U.S. 308 (1974), the Supreme Court explained that the accused's right to be confronted with the witnesses against him is more than being allowed to confront the witnesses physically.  The primary interest secured by confrontation is the right of

After *Crawford*, there is no room for arguing that written interrogatories are an acceptable substitute for live cross-examination. In light of *Crawford*, the Colorado Supreme Court held that its preliminary hearings, which are usually restricted to an assessment of probable cause and limit the defendant's right of cross-examination, do "not provide an adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause requirements."[36] More recently, the Florida Supreme Court held that discovery depositions, during which the defendant need not be present, "do not function as the equivalent of the cross-examination opportunity envisioned by *Crawford*."[37]

The SPA relies heavily upon *Maryland v. Craig*[38] for the proposition that "the right

---

cross-examination. The Supreme Court stated,

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.,* discredit, the witness. . . . [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

*Id.* at 316. Thus, the prior opportunity to cross-examine required by *Crawford* must serve that same function.

[36] *People v. Fry*, 92 P.3d 970, 978 (Colo. 2004).

[37] *State v. Lopez*, No. SC05-88, ___ So.2d ___, 2008 Fla. LEXIS 1 at *20 (Fla. Jan.10, 2008).

[38] 497 U.S. 836 (1990). In *Craig*, a closely divided, 5-4 Supreme Court held: where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.

to confrontation does not guarantee the gold standard in every case." Possibly not, but *Craig* certainly did require that the child testify under oath, be subject to "full cross-examination, and be observed by the judge, jury, and defendant during that testimony."[39] And after *Crawford* and *Davis*, confrontation and the opportunity for cross-examination are not merely "the gold standard," they are categorical imperatives. There is no substitute.

I therefore respectfully dissent to the Court's decision to dismiss this case as "improvidently granted." We should address appellant's properly preserved and presented constitutional claim.

Filed: February 13, 2008

Publish

---

> Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause.

*Id.* at 857. Only one of the Supreme Court justices who joined the majority in *Craig* is still on the court. Justice Scalia, who wrote the opinions in both *Crawford* and *Davis*, wrote a bitter dissent in *Craig* which began as follows:

> Seldom has this Court failed so conspicuously to sustain a categorical guarantee of the Constitution against the tide of prevailing current opinion. The Sixth Amendment provides, with unmistakable clarity, that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The purpose of enshrining this protection in the Constitution was to assure that none of the many policy interests from time to time pursued by statutory law could overcome a defendant's right to face his or her accusers in court.

*Id.* at 860.

[39] *Id.*