KLEIN, J.
Appellant was convicted of felony cruelty to an animal as a result of a dog being dropped from a fifth floor apartment. Appellant’s son, who was not a witness at the trial, made a statement to an officer incriminating appellant, and appellant argues that the court erred in admitting this statement under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We reverse.
The officer testified that he and a trainee officer were driving in a gated community when he saw a boy talking on a cell phone, crying and flailing his arms. When the officer asked the boy what had happened, the boy responded that his father had thrown his dog off the balcony. The boy showed the dog’s body, which was about twenty-five feet from the building, to the officer. Appellant’s explanation was that he and his son had been arguing about the fact that the son had not cleaned up after the dog, that appellant was holding the dog, and that when his son tried to take it away, it accidentally flew out of his hands and off the balcony of the apartment. The incident had occurred about twenty minutes before the officer spoke to the son.
Appellant’s son did not, in response to a subpoena, show up at trial, and, over appellant’s objection, the officer was allowed to testify as to the son’s statement that appellant had thrown the dog off the balcony. We conclude that under Crawford, and more particularly Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), as interpreted by the Florida Supreme Court in State v. Lopez, 974 So.2d 340 (Fla.2008), the statement to the officer was inadmissible.
In Davis the Supreme Court addressed two different types of statements made by victims of domestic battery in the cases of State v. Davis, 154 Wash.2d 291, 111 P.3d 844 (2005), and Hammon v. State, 829 N.E.2d 444 (Ind.2005). The Florida Supreme Court explained Davis in Lopez:
In Davis, the relevant statements were made to a 911 emergency operator as the declarant was actually being attacked by the defendant. The declarant identified Davis as the assailant. In Hammon, the relevant statements were made to police officers who had responded to a domestic dispute call. The de-clarant recounted to the police the details of a previous attack by Hammon. The Supreme Court concluded that the statements made during the 911 call in Davis were nontestimonial, while the statements to the police officers in Hammon were testimonial. As ex *277 plained by the Supreme Court, the distinction rests on the primary purpose- of the interrogation in each instance. 126 S.Ct. at 2273-74.
In Davis, the questioning by the 911 operator was to enable the responding officers to meet an ongoing emergency. The Supreme Court noted the following circumstances in Davis: the declarant was speaking about events as they were actually happening; the declarant was facing an ongoing emergency and made the 911 call in order to seek help against a bona fide physical threat; the elicited statements were crucial to resolving the ongoing emergency (i.e., the 911 operator asked who was attacking the caller, whether the attacker was using a weapon, and whether the attacker had been drinking); and the declarant was giving frantic answers over the phone in the midst of hectic events and an unsafe environment. 126 S.Ct. at 2276-77.
In contrast, the Supreme Court concluded that the primary purpose of the interrogation in Hammon was to establish or prove past events potentially relevant to later criminal prosecution.
The state argues that the son’s statement was nontestimonial, because no investigation was pending and the son was screaming and excited when the officers first encountered him. The problem with the state’s argument is that here there was no ongoing emergency, as in Davis, where the victim was speaking to a 911 operator while she was being attacked. In this case the son did not seek the assistance of the police, but rather the police approached him, and the incident had occurred twenty minutes earlier. In addition, the state contends that the son’s statement was admissible as an excited utterance; however, in Lopez, the Florida Supreme Court recognized that the admissibility of an excited utterance will still ultimately be governed by Crawford.
We conclude that, because there was no ongoing emergency, because the event described by the son had occurred twenty minutes earlier, and because the officers approached the son rather than the other way around, the son’s statement incriminating his father was testimonial and not admissible under Crawford. We accordingly reverse for a new trial.
HAZOURI and DAMOORGIAN, JJ., concur.