# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00746-CR

**Armando Perez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-06-207020, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Armando Perez of the offense of possession of a controlled substance, cocaine, in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(a), (c) (West Supp. 2009). Punishment was assessed at thirty months' imprisonment. In five issues on appeal, Perez asserts that the district court erred in denying his motion to suppress evidence; in not granting his challenges for cause to certain jurors; in excluding certain evidence that, according to Perez, "showed illegal police conduct as well as bias and lack of credibility;" and in not reviewing during the hearing on Perez's motion for new trial a patrol-car video recording of Perez's detention and arrest. Additionally, the State has acknowledged that the written judgment of conviction contains a clerical error that overstates the amount of cocaine that Perez was convicted of possessing. We will modify the written judgment to correctly

the correct amount of cocaine that Perez was convicted of possessing.  As modified, we will affirm the judgment.

**BACKGROUND**

The jury heard evidence that Perez was found in possession of a controlled substance on two occasions in late 2006.  On each occasion, Perez was arrested.  However, Perez was released on bond following the first arrest, and the current charges against Perez are based on evidence obtained during the second arrest.  However, as we explain in more detail below when discussing Perez's motion to suppress, the warrant that authorized the second arrest was based in part on evidence obtained during the first arrest.  For now, we provide a brief overview of the facts.

The first arrest occurred on October 25, 2006.  Officers testified that following a traffic stop during which controlled substances were discovered on Perez's person and in his vehicle, they obtained information that led them to believe that additional contraband would be found at Perez's residence.  Officers also testified that they obtained information that led them to believe that the residence was occupied and that there may have been a firearm on the premises.  Officers explained that once they arrived at the residence, and prior to obtaining a search warrant, they conducted a "protective sweep" of the premises.  During the protective sweep, officers testified, they discovered digital scales in plain view in one of the bedrooms.  Once they cleared the premises, they exited the house and waited for a search warrant to be obtained.  When they learned that the warrant was signed, the officers re-entered the house and found additional contraband, including marihuana, prescription pills, and a bag of cocaine.  A firearm was also found in a shoe box in the master bedroom.

2

Based on the evidence obtained during the search, one of the arresting officers filed charges against Perez for felony possession of marihuana and misdemeanor possession of prescription pills. At that time, no charges were filed against Perez based on the cocaine that was found at his residence.

Perez was subsequently released on bond. Shortly thereafter, the police received a complaint that Perez was again involved with narcotics. Another investigation was initiated, and charges were subsequently filed against Perez concerning the cocaine that was found at his residence during the October 25 search. A warrant was issued, and Perez was arrested a second time on December 12, 2006. During this arrest, officers discovered additional cocaine on Perez's person. Perez was subsequently indicted for possessing this cocaine.[1]

Prior to trial, Perez filed a motion to suppress, alleging that the evidence discovered during the October 25 search of his house had been illegally obtained and that the allegedly illegal search tainted the evidence subsequently discovered by the officers during the December 12 arrest. Following a hearing, the district court denied the motion. The case proceeded to trial, and the jury found Perez guilty as charged. During the punishment phase, more evidence concerning the investigation was presented, including a patrol-car video recording of the traffic stop that preceded Perez's first arrest. Following the punishment hearing, Perez was sentenced to thirty months' imprisonment. Perez subsequently filed a motion for new trial, again arguing that the evidence had been illegally obtained. The district court denied the motion. This appeal followed.

---

[1] Based on the other drugs found during the course of the investigation, Perez was also charged in trial court cause numbers D-1-DC-06-206020, D-1-DC-06-207021, and D-1-DC-06-302489. Those causes are not presently before us.

3

**ANALYSIS**

**Challenges for cause**

We first address Perez's third issue, in which he claims that the district court erred in failing to grant his challenges for cause of certain jurors who, according to Perez, indicated during voir dire that they could not disregard illegally obtained evidence. We review a trial court's ruling on a challenge for cause with "considerable deference" because the trial court is in the best position to evaluate the veniremember's demeanor and responses. *Smith v. State*, 297 S.W.3d 260, 268 (Tex. Crim. App. 2009), *cert. denied*, 2010 U.S. LEXIS 2190, 78 U.S.L.W. 3499 (Mar. 1, 2010). We will reverse a trial court's ruling on a challenge for cause "only if a clear abuse of discretion is evident." *Id*.

No "clear abuse of discretion" is evident here. In his brief, Perez fails to specifically identify which jurors indicated that they could not disregard illegally obtained evidence. However, Perez provides citations to the record that correspond to his objections to venirepersons 10, 11, and 18. The record reflects that the district court directly asked each of these venirepersons whether they could disregard illegally obtained evidence. Venireperson 10 answered, "Yeah." Venireperson 11 answered, "I can, Judge." Venireperson 18 answered, "I can follow the law." On this record, we cannot conclude that the district court clearly abused its discretion in denying Perez's challenges for cause. *See Brown v. State*, 913 S.W.2d 577, 580 (Tex. Crim. App. 1996) (explaining that venirepersons who ultimately state that they "can follow the law" are not challengeable for cause).

We overrule Perez's third issue.

**Suppression issues**

We will address Perez's first, second, and fifth issues together, as they all concern Perez's contention that the police illegally searched his house without a warrant and that all evidence obtained subsequent to that search, including the cocaine found on Perez's person on December 12, should have been suppressed. In his first and second issues, Perez argues that the district court erred in denying his motion to suppress. In his fifth issue, Perez briefly addresses his motion for new trial and evidence that Perez claims the district court should have reviewed during the hearing on his motion for new trial.

We first address the merits of Perez's motion to suppress.[2] "A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "'In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case.'" *Id*. (quoting *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App.

---

[2] During trial, when the State was laying the foundation for the admission of cocaine found on Perez's person on December 12, Perez's counsel stated, "I will stipulate it was cocaine in the amount of 3.87 grams. I will stipulate that and I will stipulate the admissibility." Later, when the cocaine was formally offered into evidence, counsel's only comment was, "Judge, I stipulated to that 20 minutes ago." The State asserts that counsel's "stipulation" waived any error in the admission of the evidence. *See Holmes v. State*, 248 S.W.3d 194, 201 (Tex. Crim. App. 2008) (stating that when defendant affirmatively states "no objection" to admission of evidence at time evidence is offered, defendant waives any complaint on appeal concerning admissibility of evidence); *Dean v. State*, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988) (same). Because we overrule Perez's argument on the merits, we need not address whether counsel's "stipulation" is the equivalent of an affirmative statement of "no objection." In any event, a stipulation is not an objection.

2008)). "In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

We are to "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We are to "afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id*. We review de novo "mixed questions of law and fact" not falling within that category. *Id*.

The following evidence was considered by the district court during the hearing on Perez's motion to suppress.[3] Detective Jon Walker of the Austin Police Department testified that he had initiated an investigation into Perez's alleged narcotics activity. The investigation,

---

[3] During trial, additional details concerning the investigation were elicited, and the State cites to and discusses these additional details in its brief. However, because the motion to suppress was not relitigated by the parties during trial, our review of the district court's ruling is limited to the evidence that was before it during the hearing on the motion to suppress. *See, e.g.*, *Rangel v. State*, 250 S.W.3d 96, 97-98 (Tex. Crim. App. 2008) (per curiam) ("We refuse to examine the propriety of a trial judge's ruling based on evidence that the trial judge had no opportunity to consider when he made his ruling."); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (In reviewing trial court's ruling on admissibility of evidence, "the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made."); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) ("[I]n determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.").

Walker explained, was based upon two things: (1) "anonymous information that Mr. Perez was dealing drugs" and (2) Walker learning that, at one of Perez's prior residences, "a narcotics tip report had been initiated by a uniformed patrol officer based on suspicious activity they had seen there." Pursuant to this investigation, on October 25, 2006, Walker conducted surveillance at Perez's residence at 5706 Meadow Lake Boulevard in south Austin. During the surveillance, Walker observed Perez get into his vehicle and drive away. Shortly thereafter, Walker ordered other officers to initiate a traffic stop on Perez's vehicle. When asked what was the basis for this stop, Walker testified, "I believed Mr. Perez was operating a vehicle while his license was invalid, while his privilege to drive was invalid." Walker added, "To my knowledge he could not lawfully drive a vehicle at that time."[4] When asked if driving without a license is an offense "that you can stop somebody for," Walker testified, "Yes, sir."

Detective Jason Bryant of the Austin Police Department assisted Detective Walker with the investigation. Bryant testified that while Walker was stationed at Perez's house, he was "further down" the road, "anticipating that [Perez] would come my direction." When Perez passed his vehicle, Bryant began to follow him. Having learned from Walker that Perez was driving with a suspended license, Bryant requested that a patrol officer, Amy Lynch of the Austin Police Department, initiate a traffic stop on Perez's vehicle. Bryant then followed Lynch's patrol car until she initiated the traffic stop at a gas station located at the intersection of William Cannon and I-35. Lynch testified that she did not have much involvement in the investigation after initiating the

_____

[4] No testimony was elicited during the suppression hearing concerning how Walker had knowledge that Perez's license was suspended. Perez does not challenge the legality of the traffic stop on appeal.

7

traffic stop. She explained, "I responded, made the traffic stop based on Mr. Perez's driver's license having been suspended, and then I stood there and let the detectives do their thing."

When Detectives Walker and Bryant arrived at the gas station shortly after Lynch made the stop, Walker proceeded to arrest Perez for driving with a suspended license and placed him in handcuffs. Walker "then searched him and found a pill or pill and a half in his pocket." Incident to the arrest, the detectives also searched the interior of the cab of Perez's truck and discovered marihuana under the back passenger seat.[5] After reading Perez his *Miranda* rights,[6] Walker recalled, "I asked him if we would find anything illegal at his house and he told me that there would be a joint or two of marihuana."

At that time, the officers also arrested Guadalupe Reyes, a passenger in Perez's vehicle, for possession of marihuana. Reyes was either Perez's girlfriend or common-law wife.[7] It is undisputed that Reyes and Perez lived together at the time of the traffic stop. According to Bryant, after he had advised Reyes of her *Miranda* rights, Reyes informed the detectives that she had seen Perez "take [the marihuana] from the house" and place it under the seat of the truck. Bryant claimed

---

[5] Perez has made no argument, either before or during trial or on appeal, that the search of the vehicle was illegal. *See Arizona v. Gant*, 129 S. Ct. 1710, 1723, 173 L. Ed. 2d 485 (2009) (providing that police may perform warrantless search of vehicle incident to arrest only if arrestee is within reaching distance of passenger compartment at time of search, or it is reasonable to believe vehicle contains evidence of offense for which person has been arrested).

[6] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[7] Reyes testified that Perez was her boyfriend, but Detective Walker testified that he "would call her Mr. Perez's wife." He explained, "I was under the impression that they had children together. I had indications from previous police reports that they cohabitated in three other—two other permanent residences and also cohabitated in a hotel room before." Two of Reyes' children were in the back of the vehicle at the time of the traffic stop. There was no testimony elicited at the suppression hearing concerning whether these children were related to Perez.

8

that Reyes also told them that there was more marihuana still inside the house, as well as cocaine in the amount of "about half the size of a golf ball." Bryant further testified that Reyes also advised him that "there was possibly a gun in the house."

At that time, the officers did not have a search warrant for the premises. However, Walker testified that Reyes gave the detectives permission to search the house. According to Walker, when Reyes consented to the search, she understood that they were police officers and that they were going to search the house for narcotics. Walker, Bryant, and Lynch then accompanied Perez and Reyes to the couple's residence.

When the officers arrived at the residence, they encountered Reyes's 17-year-old son, J.R. According to Bryant, J.R. "came out a little bit hostile" and was "aggressive in demeanor." Bryant testified that he frisked J.R. to make sure he did not have the gun that Reyes had earlier described, found marihuana on J.R.'s person, and "subsequently arrested [him] for that." Next, Bryant testified, the officers "cleared the house to make sure there was nobody in the house who would have access to the gun. Once we verified that there was nobody in the house, we came back out." When asked if he had entered the house before the search warrant was obtained, Bryant testified,

> Sure. To clear it for any people inside the house who may have access to that weapon. I knew that we would be outside the house waiting awhile for the search warrant. We didn't want them to have access to that weapon at any time. They could use that weapon on us.

While clearing the house, the officers discovered digital scales, but no other evidence was found at that time.

9

Walker testified that he remained outside the house in his car talking to Perez during the protective sweep. "At that point," Walker recalled, Perez "said we would find a larger amount of marihuana, some cocaine, a gun, and a large amount of cash" inside the house. Shortly thereafter, Walker transported Perez to jail, booked him, and obtained a search warrant for the premises. Once the search warrant was signed, officers who had remained outside the property re-entered the house and discovered additional contraband inside, including cocaine.

Finally, Walker testified concerning the events leading up to Perez's second arrest on December 12. Walker explained,

> Subsequent to Mr. Perez being booked into jail on the 25th and bonding back out, I received another complaint that Mr. Perez was again dealing drugs. So I initiated another investigation during which I sat down and reviewed the fact that we had not filed the relatively small amount of cocaine from the search warrant as a criminal charge against him. After confirming with my supervisor, we decided to seek a warrant for that charge and to use that arrest as a starting point for another investigation. After locating Mr. Perez at a different address in his front yard, I arrested him for that warrant and I believe that my partner at the time, Detective Bryant, found a number of other narcotics in his pocket.

Walker added that he at first refrained from filing charges against Perez for the cocaine found in Perez's house because "it is sometimes unreasonable to file seven felony charges for every small amount of a felony grade narcotic found in a person's possession." Instead, Walker explained, "it seems more reasonable to take [the] largest amount, most relevant amount of narcotics, file that case and allow that defendant to deal with that criminal charge hoping" that the defendant will then "discontinue [his] criminal activities." However, if the defendant resumes his criminal

10

activities, the police "may find it necessary to file those criminal charges." According to Walker, that was what happened here.

The only other witness to testify at the suppression hearing was Reyes. Reyes confirmed that she was with Perez when he was pulled over on October 25 and that she was arrested at that time. Reyes also confirmed that she and Perez accompanied the officers to the house; Perez was "in an APD car" and she was in Perez's truck, which was being driven by Detective Bryant. Reyes further confirmed that her son was at the residence when they arrived, but she denied that he was being "aggressive toward the officers" when he encountered them. Reyes provided no testimony either confirming or denying that she gave consent to search the house or whether she told the officers that there was a gun inside.

The district court denied the motion to suppress and made the following findings:

> The court finds that Mr. Perez, on October 25, 2006, was driving without a driver's license or after license had been suspended. There was a valid and legal stop by a uniformed law enforcement officer at the request of another officer who had knowledge that the defendant's license was suspended. At the time of the stop the defendant, his truck was found in a controlled substance search incident to arrest [sic]. The defendant made admissions with regard to the substance being his. The Court further finds the defendant admitted that there were controlled substances, marihuana, cocaine, in his home and a weapon also.
>
> The Court further finds that a person Guadalupe Reyes, also known as Guadalupe Rodriguez in the record, gave consent to enter and/or search the house. She was a resident, had valid right and authority to do so. The Court further finds that because of the existence of a weapon and the delay that was necessary in order to obtain and secure a valid search warrant, the officers exercising proper procedure and practice set up on the house. They did an initial inspection of the house to ensure that there would be no one in there to pose a danger or threat to them or their safety and did not conduct a search at that time. A search warrant was validly issued and executed. Those are the findings of fact and conclusions of law.

11

> With regard to the events of . . . December 12, 2006. . . . The Court finds the defendant was—had a valid warrant for his arrest and the arrest warrant was executed, found substances pursuant to that.

In arguing that his motion to suppress should have been granted, Perez focuses almost exclusively on the legality of the protective sweep of the premises. In his first issue, Perez contends that "there was no basis for [the] protective sweep of appellant's residence as a matter of law."[8] Perez further contends that the claimed illegality of the protective sweep tainted all evidence subsequently obtained by the officers during the investigation. In his second issue, Perez asserts that "even if a protective sweep could be proper under the facts of this case, there was no credible basis for believing that appellant ever indicated that there was a firearm inside his residence until after the officers had conducted the protective sweep."

Even assuming without deciding that the officers were not authorized to conduct a protective sweep of the residence in this case, we cannot conclude on the record before us that the district court abused its discretion in denying Perez's motion to suppress. First, the record supports the district court's finding that the officers had consent to search the premises. *See Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007) (explaining that consent to search is "one of a few well-delineated exceptions" to warrant requirement). Detective Walker testified that Reyes gave the detectives permission to search the house. Walker further testified that when Reyes consented to the

---

[8] *See Maryland v. Buie*, 494 U.S. 325, 327 (1990) ("A 'protective sweep' is a quick and limited search of premises, *incident to an arrest* and conducted to protect the safety of police officers or others.") (emphasis added); *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000) ("When conducting an *in-home arrest*, a police officer may sweep the house only if he possesses an objectively reasonable belief, based on specific and articulable facts, that a person in that area poses a danger to that police officer or to other people in the area.") (emphasis added).

search, she understood that they were police officers and that they were going to search the house for narcotics. At the suppression hearing, no contrary evidence was presented that Reyes did not consent to the search.[9] It was undisputed that Reyes and her children lived in the house. In fact, Reyes provided testimony from which the district court could have reasonably inferred that Reyes and her children lived there, including that her son had exited the garage when the officers arrived, that one of her daughters went inside the house to use the bathroom, and that the door to the master bedroom was locked when she and Perez had earlier left the house. Thus, the record supports the district court's finding that Reyes was a resident of the house and had the authority to consent to the search. *See United States v. Matlock*, 415 U.S. 164, 172 & n.7 (1974) (explaining that co-inhabitants of residence have right to consent to search of premises). Counsel for Perez argued at the suppression hearing that Perez himself did not consent to the search. *See Georgia v. Randolph*, 547 U.S. 103, 120 (2006) ("[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident."). However, Perez provided no testimony or evidence at the suppression hearing tending to show that he expressly refused consent. *See Luna v. State*, 268 S.W.3d 594, 604 n.26 (Tex. Crim. App. 2008) (noting that, for *Randolph* to apply, there must be evidence presented that defendant "was both physically present [at the residence] and expressly refused consent").

---

[9] During punishment, Reyes testified that she did not consent to the search. Again, however, our review of the district court's ruling is limited to what was before it during the suppression hearing. *See Rachal*, 917 S.W.2d at 809.

Moreover, the district court would not have abused its discretion in finding that any taint from the October 25 protective sweep was sufficiently attenuated when the police arrested Perez on December 12. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (explaining that question to be asked in determining whether evidence should be suppressed under "fruit of the poisonous tree" doctrine is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint"). Here, the officers testified that the only evidence obtained during the protective sweep were the digital scales. According to the officers, all other evidence discovered in the house, including the cocaine that formed the basis for the warrant that authorized Perez's second arrest, was obtained following the execution of a search warrant—the validity of which Perez did not challenge at the suppression hearing.[10] The search warrant was based on Perez's admissions to Detective Walker, both during the traffic stop and at the house, that marihuana, cocaine, money, and possibly a gun would be found in the house, and Reyes's admission to Detective Bryant that the marihuana found during the traffic stop had been brought from the house into the vehicle by Perez. Additionally, Perez is currently being charged for

---

[10] In his brief, Perez asserts that Detective Walker provided false testimony both at the suppression hearing and during trial and that the search warrant was based on false statements that Walker made in his offense report and in the probable cause affidavit. However, there is nothing in the record to support these assertions. Perez did not request a hearing to determine whether any of Walker's statements were false, *see Franks v. Delaware*, 438 U.S. 154 (1978), nor did he provide any evidence of Walker's alleged misstatements at the suppression hearing. Thus, Perez's claims regarding the validity of the search warrant have not been preserved for review. *See Harris v. State*, 227 S.W.3d 83, 85-86 (Tex. Crim. App. 2007) (explaining what defendant is required to show trial court in order to be entitled to *Franks* hearing and to preserve issue for appellate review).

14

possessing the cocaine that was found on his person during the December 12 arrest, not for the cocaine that was found in his house on October 25. Walker testified that the December 12 arrest was based on a complaint that Perez was again selling narcotics. Thus, the district court would not have abused its discretion in finding that this evidence was obtained independent of the protective sweep.

We overrule Perez's first and second issues.

In his fifth issue, Perez claims that the district court erred in refusing to review, during the hearing on his motion for new trial, the patrol-car video recording of the traffic stop and arrest on October 25. Perez also contends generally in this issue that his "motion for new trial should have been granted."

We review a trial court's denial of a motion for new trial under the "abuse of discretion" standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *Id*. We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. *Id*. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id*.

We could not conclude on this record that the district court abused its discretion in denying Perez's motion for new trial. The record reflects that the recording Perez sought to admit at the hearing had already been played in its entirety during the punishment phase and that the same judge presided over both the trial and the hearing on the new-trial motion. Having already

viewed the recording at an earlier stage of the proceedings, the district court would not have abused its discretion in declining to review it again at the hearing on the motion for new trial. Moreover, Perez's counsel took the stand and testified at the hearing on the motion for new trial that he believed the recording "positively shows that Mr. Perez did not make a statement which Detective Walker alleged to him, namely that there was a gun in the house prior to the detectives . . . going into his house." Thus, Perez's argument for having the district court consider the recording was that it was relevant to the issue of the legality of the protective sweep of Perez's house on October 25. But, as we have already explained, even if the protective sweep was impermissible, this alone would not have made the evidence that was found on Perez when he was arrested on December 12 inadmissible. Accordingly, the district court would not have abused its discretion in finding that the recording would not have affected its pretrial ruling on Perez's motion to suppress.

We overrule Perez's fifth issue.

**Exclusion of evidence**

Finally, in his fourth issue, Perez contends that the district court abused its discretion in excluding evidence during trial that, according to Perez, "showed illegal police conduct as well as bias and lack of credibility." Perez is referring to evidence tending to show that Detective Walker did not immediately file charges against him for all of the drugs found in Perez's possession on October 25.

When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse-of-discretion standard. *Ramos*, 245 S.W.3d at 417-18. The trial court does not abuse its

discretion unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

When Perez attempted to elicit testimony from Detective Walker concerning Walker's decision to refrain from filing charges against Perez for all of the drugs found in his possession, the State objected, and the district court allowed Perez to make an offer of proof outside the presence of the jury. The following testimony was elicited:

Q: Detective Walker, you would agree with me that it wouldn't be proper for an officer who completed a search warrant and found three arrestable units—do you know what I am saying when I say three arrestable units?

A: I think I understand what you mean, yes.

Q: Three different offenses which could be charged. It wouldn't be appropriate for an officer to file two and then pocket one so that at some later date he could arrest the person and search them to see if he could obtain more drugs. That would not be proper. Would you agree with that?

A: I am confused with your words that you are using when you say "pocket an arrest warrant." I think that investigators and prosecutors have discretionary bounds within which they pursue investigations and prosecute defendants. I think that the judicious application of that discretion is absolutely appropriate and if that discretion points an investigation toward not filing a whole lot of charges at one time, then I think that would be the appropriate thing to do.

Q: Sure, sure, and if that was the motive, that would be great. But what I am saying is what if an officer had the specific intent of just filing two with the specific intent of waiting until the person makes bond to then file the other one so that they could execute that arrest warrant and search the individual again in hopes of discovering more drugs. If that was an officer's specific intent, would you agree with me that that narcotics officer would have a specific bias against the person he was investigating?

. . . .

17

A:    I think that if what you are describing is somebody applying discretion in a biased fashion, that would be improper, yes. . . .

. . . .

Q:    And you did conduct the search warrant, correct?

A:    I did.

Q:    And that did yield three different offenses which he does now stand charged with, correct?

A:    The search warrant specifically dealt with, yeah, at least three drug offenses that I can think of right now.  There was a potential firearms investigation.  I think it was renewed [sic] for federal prosecution and declined.  There were traffic offenses just previous to the search warrant with which he wasn't charged.  And yes, I did do that.  I exercised discretion in that case which I felt was appropriate after conferring with my supervisor.

Q:    So there were three units that could have been charged in this case that are now charged presently.  Yes?

A:    So far as I know. . . .

Q:    And you filed—the day that you did the search warrant you filed for two, yes?

A:    I believe . . . shortly thereafter within the appropriate amount of time I did file some charges, yes.

Q:    While he was in custody you filed charges, two charges, correct?

A:    I think I would have had to, yeah.

Q:    And then you waited until after he was out of custody to file the last charge, the one that we are now basing the arrest warrant for this case on?

A:    No, not the way you say it.  I didn't wait to file the charge—

Q:    There was a time gap.

A:    I didn't have any anticipation or need to file that charge.  It wasn't until I received a subsequent complaint about Mr. Perez allegedly dealing drugs that

18

I thought it was appropriate to open another investigation, which I started by filing that relatively small amount of cocaine charge.

Q: Right. There was a time gap in between when he was in custody, you filed the first two charges and when you filed the third charge?

A: Yes.

Q: And he was out of custody when you filed the third charge?

A: As far as I know.

Q: And you are saying that that wasn't as a result of intentional bias against Mr. Perez?

A: No. I kind of hoped he would stop dealing drugs.

The district court sustained the State's objection and did not allow Perez's counsel to proceed with this line of questioning. The district court then addressed Perez directly and explained to him that the questions "would result in the jury knowing through testimony of this detective that you have this case you are being tried for plus three cases that are felonies." Such testimony, the district court believed, "might harm your case in a sense that the jury may think you are a person generally involved in these type activities and it possibly could harm you in the fairness of your trial in this case." Perez indicated that he understood these concerns. Perez's counsel explained, "I have informed Mr. Perez that I believe that on punishment . . . much of this evidence would come in anyway, so why not just get it out early." The district court maintained its ruling, stating, "I will not in any way have this jury in any way decide that this defendant [is], as the rules have said, a criminal in general, and I think the prejudicial impact outweighs any probative value.

19

Rule of evidence 403 provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. In making this determination, courts examine the proffered evidence in light of several factors including the following: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence.

The district court would not have abused its discretion in finding that the balance of the above factors weighed in favor of excluding the evidence. First, the district court could have found that the probative value of the evidence was low, as was Perez's need for the evidence. We agree with the State that "it is not at all clear what the probative value of the evidence would be." The district court could have found that, far from showing "illegal police conduct," "bias," and "lack of credibility," the evidence tended to show that Detective Walker exercised discretion and lenience toward Perez in refraining from immediately filing all three charges against him. Walker denied any improper motive or bias. And, given Walker's knowledgeable responses to counsel's questions, the district court could have found that the testimony tended to enhance Walker's credibility rather than detract from it. Moreover, even if the evidence did show some sort of bias of Walker against Perez, such evidence would do nothing to address the ultimate issue of whether Perez was guilty of committing the offense for which he was currently being charged.

On the other hand, the district court could have found that the time needed to develop the evidence would have been significant. If the testimony would have been admitted, the

20

parties would have needed to develop evidence concerning, among other things, the other charges against Perez, the specific reasons why not all the charges were filed at once, the procedures and protocol the Austin Police Department typically follows in such cases, and whether Walker followed those procedures in this case. The district court also could have found that the potential of the evidence to impress the jury in some irrational, yet indelible, way was high. "It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not for being a criminal generally." *Pavlacka v. State*, 892 S.W.2d 897, 904 (Tex. Crim. App. 1994). It is for this reason that there are rules of evidence prohibiting the admission of extraneous offenses except in certain narrowly defined circumstances. *See* Tex. R. Evid. 404(b), 609. As the district court observed, by admitting Perez's extraneous felony offenses at guilt/innocence, the jury might have been inclined to convict Perez of the other charges for which he was not at that time being tried. On this record, we cannot conclude that the district court's decision to exclude evidence concerning the other charges against Perez was "outside the zone of reasonable disagreement."

We overrule Perez's fourth issue.

**Clerical error in judgment**

Finally, the State has pointed out that while the written judgment of conviction specifies that Perez was convicted of possessing cocaine in an amount of four grams or more but less than 200 grams, Perez was actually convicted of possessing cocaine in an amount of one gram or more but less than four grams. The appropriate remedy is to modify the district court's written judgment to reflect the correct amount. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d

21

26, 27-28 (Tex. Crim. App. 1993); *Nicholas v. State*, 56 S.W.3d 760, 767 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

## CONCLUSION

We modify the district court's judgment to reflect that Perez was convicted of possessing cocaine in an amount of one gram or more but less than four grams.  As modified, we affirm the judgment of the district court.

_____

Bob Pemberton

Before Justices Patterson, Puryear and Pemberton

Modified and, as Modified, Affirmed

Filed:   May 5, 2010

Do Not Publish