**In the Interest of S.R., Appeal of S.R.**

Superior Court of Pennsylvania.

Argued Jan. 30, 2007.

Filed March 21, 2007.

---

**5.** As used in 42 Pa.C.S.A. § 9714(g), the term "crime of violence" means robbery as defined in 18 Pa.C.S.A. § 3701(a)(1)(i), (ii) or (iii).

Marissa Bluestine, Public Defender, Philadelphia, for appellant.

Michael Erlich, Assistant District Attorney, Philadelphia, Com., Participating Party.

BEFORE: JOYCE, KLEIN, JJ., and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 S.R., then sixteen years old, appeals from the disposition following an adjudication of delinquency on the charges of aggravated indecent assault and related offenses for allegedly molesting his four-year-old niece, L.K. We conclude L.K.'s statements to her mother were non-testimonial and therefore properly admitted under the Tender Years Statute. However, because we conclude that L.K.'s statements from her interview with a forensic interview specialist were testimonial, as recently defined by the United States Supreme Court, admission of those statements violated S.R.'s Sixth Amendment right of confrontation. We therefore reverse and remand for a new adjudicatory hearing.

¶ 2 When L.K. was put on the stand, she broke down and was unable to testify. It is agreed that she was therefore unavailable. The essential testimony proffered was from L.K.'s mother, B.K., (S.R.'s older sister) and Jacqueline Block, a forensic interview specialist with the Philadelphia Children's Alliance (PCA). B.K. first questioned her daughter when her daughter was simulating sex acts and saying sexually explicit things to her dolls. L.K. told B.K. that her uncle, S.R., had assaulted her sexually. Later, Ms. Block was contacted by the police to do the interview for the police investigation. Ms. Block testified that this procedure was used to limit the number of times the child victim had to be interviewed. Ms. Block was alone with L.K., but a police officer watched through one-way glass. Although L.K. was allowed to color and play, the interview followed the pattern of court testimony.

¶ 3 The defense does not claim that the trial court erred in finding that the testimony was admissible under the Tender Years Statute. 42 Pa.C.S.A. § 5985.1.[1] Instead, the defense claims that admission of the testimony violates the Confrontation Clause of the Sixth Amendment of the United States Constitution.[2] We hold that under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Davis v. Washington*, —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Mother's questioning of her daughter was not designed for prosecution and therefore

---

1. The Tender Years Statute creates an exception to the hearsay rule in recognition of the fragile nature of young victims of sexual abuse; it allows statements made by a child victim of sexual assault to be admitted into evidence, if the statements are relevant and sufficiently reliable. The statute provides:

   Admissibility of certain statements
   (a) General rule.-An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in [18 Pa.C.S.A., chapter 31, relating to sexual offenses], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
   (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
   (2) the child either:
   (i) *testifies at the proceeding;* or
   (ii) is unavailable as a witness.
   42 Pa.C.S.A. § 5985.1(a).

2. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI.

her statements are non-testimonial, and L.K.'s statements to Ms. Block from her interview, carried out under the direction of the police department and for purposes of the investigation and potential prosecution, are testimonial. Ms. Block's testimony violates the Confrontation Clause as interpreted in *Crawford* and, more recently, in *Davis*. We therefore reverse and remand for a new adjudicatory hearing.

**Facts**

¶ 4 As noted, L.K. became hysterical on the witness stand. The trial court held an *in camera* hearing and determined that she was not competent to testify. Based on this and on other indications of reliability, the Commonwealth invoked the Tender Years Statute. S.R. does not challenge the trial court's application of the statute, but rather the constitutionality of its application.

¶ 5 The testimony came from B.K., L.K.'s mother, who is also S.R.'s sister. B.K. testified that she dropped off L.K. at her mother's home, where S.R. also lived, for babysitting. (N.T. Hearing, 9/7/05, at 9). When B.K. returned, she saw L.K. and S.R. sleeping underneath the covers in S.R.'s bed. Five days later, B.K. saw L.K. playing with her dolls, bending them over and saying, "Do you want me to do it to you?" *(Id.* at 13–14). When B.K. asked L.K. what was wrong, L.K. asked her mother if S.R. was allowed to put his finger in her butt. *(Id.* at 15). L.K. then told B.K. that S.R. put his finger in her butt and she told B.K. she didn't like it. *(Id.* at 15). Later, B.K. saw L.K. trying to ram a paper towel holder into her baby sister's rear end, through the diaper, saying "Yeah, you like that, huh? You like that." *(Id.* at 28).

¶ 6 When B.K. took her daughter L.K. to the pediatrician, L.K. refused to take off her clothes and let the doctor examine her, and she said that S.R. didn't do it. *(Id.* at 21). L.K. began crying and closed her legs tightly. She had never reacted this way before. The pediatrician recommended L.K. be evaluated at St. Christopher's Hospital. *(Id.* at 22). That examination was inconclusive.

¶ 7 Later, B.K. testified that L.K. told her more of the details, describing how S.R. used hair gel and put his fingers in her butt. B.K. testified that after that L.K. would not allow anyone to do her hair. *(Id.* at 27).

¶ 8 The next witness was Jacqueline Block, employed by the Philadelphia Children's Alliance (PCA) as a "forensic interview specialist." PCA coordinates and facilitates multi-disciplinary investigations involving child abuse. *(Id.* at 72). Block was contacted by the police to carry out the interview with L.K. Block testified that she is trained to examine children in a neutral fashion and an appropriate way to avoid traumatizing the child, "and to minimize the number of interviews that a child has to receive over the course of an investigation." *(Id.* at 73). Block further stated that this procedure "hopefully diminishes that number by bringing Department of Human Services and the police together and documenting the complete interview." *Id.*

¶ 9 While Block conducted the interview alone with L.K., a Philadelphia police officer observed the interview through a one-way mirror. *(Id.* at 73–74). Block started the interview by determining if L.K. knew the difference between truth and lies, and the interview went much as trial testimony might go. L.K. described how S.R. put his finger in her butt. She described how he used purple gel. *(Id.* at 79–80). During the interview, Block took a break to conference with "the team"—the police officer and someone from the Department of Health and Human Services. At the end of the interview, Ms. Block asked L.K.:

"What do you want to happen to Uncle S.R.?" She replied, "I want him to go to jail cause [sic] that's nasty." *(Id.* at 84).

**Discussion**

¶ 10 Although S.R. raised other issues in his Pa.R.A.P.1925(b) statement, on appeal he only challenges the violation of his right to confront his accuser.

¶ 11 This case is controlled by the United States Supreme Court's decisions in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *Davis v. Washington,* — U.S. —, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). We note that *Davis* was decided six months *after* the trial judge wrote his 1925(a) opinion in this case, so obviously *Davis* was not discussed in that opinion.

¶ 12 In *Crawford,* Justice Scalia wrote that the Confrontation Clause was designed to curtail the use of *ex parte* examinations against an accused, particularly interrogations by law enforcement officers. The Court redefined the scope and effect of the Confrontation Clause, specifically overruling, in part, *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which conditioned the admissibility of all hearsay evidence on whether it fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. 2531. The *Crawford* Court stated: "The *Roberts* test departs from historical principles because it admits statements consisting of *ex parte* testimony upon a mere reliability finding." 541 U.S. at 60, 124 S.Ct. 1354. Therefore, under *Crawford, no prior testimonial statement* made by a declarant who does not testify at the trial may be admitted against a defendant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him or her. *Id.* at 59, 124 S.Ct. 1354.

¶ 13 Although *Crawford* left "for another day any effort to spell out a comprehensive definition of 'testimonial'," the Court stated that at a minimum it covered "prior testimony at a preliminary hearing, before a grand jury, or at a former trial, including *ex parte* statements made in court, affidavits, depositions, confessions, and other pretrial statements that declarants would reasonably expect to be used prosecutorially." 541 U.S. at 51, 68, 124 S.Ct. 1354. However, where a statement is nontestimonial, "it is wholly consistent with the Framer's design to afford the States flexibility in their development of hearsay law." *Id.* at 68, 124 S.Ct. 1354. *Crawford,* therefore, left the *Roberts* approach untouched with respect to nontestimonial statements.

¶ 14 In the recent case of *Davis v. Washington,* and its companion case, *Hammon v. Indiana,* the Supreme Court more specifically addressed the distinction between testimonial and nontestimonial statements made during police interrogations. Writing for the *Davis* Court, Justice Scalia explained that "these cases require us to determine more precisely which police interrogations produce testimony." *Id.,* at 2273. He then set forth a "primary purpose" test for determining whether statements were testimonial or nontestimonial. *Id.* at 2273–74. Therefore, whether or not there are changes in circumstances in this Millennium which might make it desirable to uphold the principles of the Tender Years Statute, under the strict historic definition of the Confrontation Clause set forth by Justice Scalia we are bound to view the circumstances in the light of the interpretation set forth in *Crawford* and *Davis.*

¶ 15 In *Crawford,* the statement barred was that of a wife who invoked the marital privilege. Her husband was charged with murder. Wife's statement contradicted her husband, who said the victim pulled a

weapon before he stabbed the victim. Under *Crawford*, if a witness is unavailable, a police interview would be barred from testimony as a violation of the Confrontation Clause. Here, an interview conducted at the behest of the police, with a police officer observing and conferencing with the interviewer, with the expectation that it might be used at a trial, should be treated no differently.

¶ 16 *Davis* involved two defendants in a consolidated case, Davis and Hammon. In *Davis*, the witness called 911 and said that she was beaten by her former boyfriend, Davis, who had just fled the scene. In *Hammon*, there was a domestic dispute, and Amy Hammon, shortly after the event, told the police that her husband, Hershel, had beaten her. The statement was made while she was safe and with the police and while Hershel was in another part of the house and denied the opportunity to be with her. Justice Scalia, who authored both *Davis* and *Crawford*, drew a distinction between "testimonial" hearsay and "nontestimonial" hearsay in *Davis*, stating:

> Without attempting to produce an exhaustive classification of all conceivable statements-or even all conceivable statements in response to police interrogation-as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

126 S.Ct. at 2274. Although the Court noted that "our holding today makes it unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial,' the Court did note that 911 operators, although not themselves law enforcement officers, "may at least be agents of law enforcement when they conduct interrogations of 911 callers." *Id.* at 2274 n. 2.

¶ 17 The issue to be determined, therefore, is whether L.K.'s statements to her mother and to Ms. Block are testimonial or nontestimonial. In *Crawford*, Justice Scalia cited an *amicus* brief for the proposition that testimonial statements were "statements that were made under circumstances which would lead an "objective witness" reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 52, 124 S.Ct. 1354, citing Brief for National Association of Criminal Defense Lawyers et al. *as Amici Curiae* 3. While the Commonwealth takes the position that this means the *witness* must think the statement can be used at trial, and therefore a four-year-old would not know why the statement is taken and it should not be considered "testimonial," that is not a fair reading of what is actually an aside in *Crawford.*

¶ 18 As the historical review by Justice Scalia illustrates, the purpose of the Confrontation Clause is protection against an overreaching government:

> First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused. It was these practices that the Crown deployed in notorious treason cases like Raleigh's; that the Marian statutes invited; that English law's assertion of a right to confrontation was meant to prohibit; and that the found-

ing-era rhetoric decried. The Sixth Amendment must be interpreted with this focus in mind.

*Id.* at 50, 124 S.Ct. 1354.

¶ 19 After Justice Scalia indicated it was clear that *ex parte* in-court testimony or prior testimony where there was no ability to cross-examine was testimonial, he went on to discuss police interrogations, and stated:

> Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard. Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of oath was not dispositive.

541 U.S. at 51–52, 124 S.Ct. 1354.

¶ 20 In *Davis,* Justice Scalia noted that the primary purpose of the statements, as determined by an objective view of the circumstances, generally determines whether or not the statements are testimonial. 126 S.Ct. at 2273–74. Therefore, the test is not how the *person questioned* views the interrogation, but what the purpose of the statement was as determined by an objective view of the circumstances. It makes more sense to ask whether an objective person, looking at the circumstances of the questioning, would consider the purpose of the statements as aiding the investigation. Was it a statement taken to address an immediate situation and see what is going on, like a mother's questioning of her child in this case and like the 911 emergency call in *Davis,* or was it a step taken in a police investigation after the action is over for purposes of aiding the investigation and potential prosecution, like Amy Hammon's statements to police in *Hammon,* and like L.K.'s statements to Block during the interview?

¶ 21 Much as the Commonwealth tries, it is hard to imagine that the police calling in a "forensic specialist," viewing the proceeding through one-way glass, conferring with the examiner, and having the examiner prepare questioning as if it were direct examination in court could be anything other than a step in the government's effort to prepare testimony for court. The interview was the functional equivalent of a police interrogation; such statements are inherently testimonial because they "are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination." *Davis,* 126 S.Ct. at 2278 (emphasis in original). An objective view of the primary purpose of these statements, looking at the nature and circumstances of the questioning, indicates the statements to Block were testimonial. While the Commonwealth argues that such questioning does not always lead to an arrest, neither does police interrogation, but that does not make it any less testimonial.

¶ 22 If there were any doubt, it should be dispelled by the contrast in *Davis* between the 911 call with respect to defendant Davis, and Amy Hammon's statement to police with respect to defendant Hammon. Amy Hammon's testimony was taken far closer to the time of the event than that of L.K., and it was taken at the scene where the attack had just taken place. The Supreme Court in *Davis* said that finding Amy Hammon's statements testimonial was an easier task than the 911 call with respect to defendant Davis. The Court said, "It is entirely clear from the circumstances that interrogation was part of an investigation into possibly criminal past conduct, as, indeed, the testifying officer expressly acknowledged." 126 S.Ct. at 2278. If Amy Hammon's statements were part of an investigation, then L.K.'s statements to Block are even more so.

¶ 23 In contrast, an objective view of the primary purpose of B.K.'s questioning of L.K. leads us to conclude that that B.K.'s statements were nontestimonial. A mother's questions to her child in response to her child's disturbing behavior cannot objectively be viewed in these circumstances as a step toward investigation or trial. Such a characterization ignores the nature of the relationship and a parent's basic instincts. Like the statements in *Davis*, B.K.'s questioning was an attempt to address the immediate situation.

¶ 24 Other jurisdictions, too, have applied *Crawford* and *Davis* in this manner, using an objective analysis of the primary purpose of the interrogation as opposed to the declarant's view of what the statements are to be used for. *See, e.g. People v. Sharp*, 155 P.3d 577 (Colo.App.2006) (if child makes statement to government agent as part of police interrogation, his or her statement is testimonial under *Crawford*, and only admissible against accused if accused had opportunity to cross-examine child when statement was made, irrespective of child's expectations regarding whether statement will be available for use at later trial; holding admission of five-year-old daughter's videotaped interview taken by private forensic interviewer violated defendant's constitutional right to confront witnesses under *Crawford*); *State v. Ayer*, 154 N.H. 500, 917 A.2d 214 (2006) (primary purpose of officer's questioning of defendant's wife near scene of shooting was to enable police to meet ongoing emergency; wife's statements to officer were therefore nontestimonial); *Raile v. Colorado*, 148 P.3d 126, 132 (Colo.2006) (court stated unavailable witness's statements more closely resembled facts in *Hammon* than *Davis*; no immediate threat even though declarant was "testifying" to police officer in same way she would have testified in court); *State v. Bird*, 136 Wash.App. 127, 148 P.3d 1058

(2006) (eyewitness's statements to police officer made during course of interrogation were testimonial where primary purpose of interrogation was to establish past events potentially relevant to later criminal prosecution); *State v. Araujo*, 36 Kan. App.2d 747, 144 P.3d 66 (2006) (911 caller's statements nontestimonial); *State v. Alvarez*, 213 Ariz. 467, 143 P.3d 668 (App.2006) (victim's statements to police officer, made when officer found victim semi-conscious near site where victim's car was stolen and victim was beaten, were nontestimonial; primary purpose of officer's questioning was to meet ongoing emergency).

¶ 25 The Commonwealth, as part of its argument that one should assess what the child thinks of the interview, implies that we should treat child abuse cases differently. The Commonwealth relies heavily on the case of *State v. Bobadilla*, 709 N.W.2d 243 (Minn.2006). There, the Minnesota Supreme Court held, in circumstances similar to this case, that statements by a three-year-old to a child protection worker were not testimonial, even though a plainclothes officer was present at the time. *Id.* at 255. Notably, this case was decided four months prior to *Davis*, and, further, the *Bobadilla* court cited extensively to *Hammon v. State*, 829 N.E.2d 444 (Ind.2005), which the *Davis* Court reversed. It is clear that the Supreme Court will not countenance such an exception. In *Davis*, the Court rejected the concept that there should be more flexibility in domestic abuse cases, just as. it is argued that there should be more flexibility in child abuse cases. Justice Scalia said:

> Respondents in both cases, joined by a number of their *amici*, contend that the nature of the offenses charged in these two cases—domestic violence—requires greater flexibility in the use of testimony evidence. This particular type of crime

is notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial. When this occurs, the Confrontation Clause gives the criminal a windfall. We may not, however, vitiate constitutional guarantees when they have the effect of allowing the guilty to go free.

126 S.Ct. at 2279–80.

¶ 26 We note that the Pennsylvania Legislature in enacting the Tender Years Statute tried to do exactly that—create greater flexibility when it comes to the testimony of children claiming abuse, carving out an exception to the Confrontation Clause. This Court and the Pennsylvania Supreme Court upheld that Act as a valid legislative prerogative. However, the United States Supreme Court has not, and we are bound by its determination that testimonial statements are not subject to the "tender years" exception to the hearsay rule as that violates the Sixth Amendment right to confrontation. Therefore, we hold that L.K.'s statements to Block were testimonial and therefore admission of those statements under the Tender Years Statute violates the Sixth Amendment right to confrontation. We also hold that L.K.'s statements to her mother were nontestimonial and therefore admission of those statements was proper under the Tender Years Statute. We are constrained to reverse the disposition and remand for a new adjudicatory hearing.

¶ 27 Reversed and remanded for new hearing. Jurisdiction relinquished.

¶ 28 JOYCE, J., concurs in the result.