J-S27009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.S.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S.A., A MINOR | : | No. 3114 EDA 2015 |

Appeal from the Dispositional Order September 18, 2015
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-JV-1000068-2015

BEFORE:  GANTMAN, P.J., OTT, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                     **FILED JUNE 02, 2017**

Appellant, R.S.A., a minor, appeals from the dispositional order entered in the Philadelphia County Court of Common Pleas, Juvenile Division, following his adjudications of delinquency for involuntary deviate sexual intercourse with a child ("IDSI"), sexual assault, and indecent assault.[1]  We remand for further proceedings.

In its opinion filed May 13, 2016, the Juvenile court accurately set forth the relevant facts and procedural history of this case.[2]  Therefore, we have no reason to restate them.

---

[1] 18 Pa.C.S.A. §§ 3123(b); 3124.1; 3126(a)(7), respectively.

[2] On September 18, 2015, the court adjudicated Appellant delinquent and placed him on probation until further order of court.  Additionally, the court ordered Appellant to attend DelStar (an outpatient program for adolescents who are adjudicated of a sexual offense), to undergo random drug screens,
*(Footnote Continued Next Page)*

---

*Retired Senior Judge assigned to the Superior Court.

Appellant raises the following issues for our review:

> WAS NOT THE EVIDENCE INSUFFICIENT FOR AN ADJUDICATION OF DELINQUENCY ON ALL CHARGES, INSOFAR AS THE EVIDENCE OF [APPELLANT'S] GUILT WAS SO UNRELIABLE AND CONTRADICTORY THAT IT WAS INCAPABLE OF SUPPORTING A DETERMINATION OF GUILT BEYOND A REASONABLE DOUBT?
>
> IN THE ALTERNATIVE, WAS NOT THE DETERMINATION OF GUILT AGAINST THE WEIGHT OF THE EVIDENCE TO SUCH A DEGREE AS TO SHOCK THE CONSCIENCE?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Arthur E. Grim, we conclude Appellant's first issue merits no relief. The Juvenile court opinion comprehensively discusses and properly disposes of that question. (*See* Juvenile Court Opinion, filed May 13, 2016, at 8-9) (finding: thirteen-year-old Appellant deceived seven-year-old Victim by luring her into bathroom under false pretenses during another child's birthday party; Appellant told Victim to close her eyes and open her mouth so Appellant could give Victim gum; after Victim complied, Appellant put his penis in Victim's mouth; Victim saw Appellant's penis when she blinked her eyes; Victim identified Appellant in court as her assailant; age of Victim as well as circumstances of case precluded consent; Victim's testimony was very

*(Footnote Continued)* ──────────────

to have no unsupervised contact with children under twelve years old, and to be subject to a curfew.

credible; any contradiction in record is result of young Victim not initially knowing proper name for penis; Victim was clear throughout her testimony which part of Appellant's anatomy was involved in assault; Victim's testimony was consistent with her earlier statements to her teacher, guidance counselor, and mother; Commonwealth presented sufficient evidence to sustain Appellant's adjudications of delinquency for IDSI with child, sexual assault, and indecent assault).   Therefore, we conclude Appellant's first issue is meritless.

Regarding Appellant's second issue challenging the weight of the evidence, we observe that generally, a weight claim must be preserved by a motion for a new trial.  **See** Pa.R.Crim.P. 607 and *Comment* (stating: "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived").

By contrast, the Rules of Juvenile Court Procedure governing delinquency matters "are utterly silent as to how a weight of the evidence claim must be presented to the juvenile court so that it may rule on the claim in the first instance, which is…a necessary prerequisite for appellate review."  **In re J.B.**, 630 Pa. 124, 160, 106 A.3d 76, 98 (2014). Specifically, Pennsylvania Rule of Juvenile Court Procedure 620 provides, in pertinent part:

**Rule 620.  Post-Dispositional Motions**

**A. Optional Post-Dispositional Motion.**

(1)     The parties shall have the right to make a post-dispositional motion.  All requests for relief from the court shall be stated with specificity and particularity, and shall be consolidated in the post-dispositional motion.

(2)     Issues raised before or during the adjudicatory hearing shall be deemed preserved for appeal whether or not the party elects to file a post-dispositional motion on those issues.

Pa.R.J.C.P. 620(A).  Thus, juveniles in delinquency matters face "procedural rules [which make] optional the filing of a post-dispositional motion, and which [do] not otherwise specify how a weight of the evidence claim [is] to be presented in the first instance to the juvenile court in order to preserve it for appellate review."[3]   *J.B., supra* at 160-61, 106 A.3d at 98. Consequently, the failure to preserve a weight-of-the-evidence challenge in a post-dispositional motion does not result in automatic waiver of the claim on appeal in juvenile delinquency matters.  *See id.* (holding juvenile did not waive challenge to weight of evidence where he failed to raise that claim in

_____

[3] Rule 620(A)(2) does not aid a juvenile in preserving a challenge to the weight of the evidence because the juvenile cannot raise a weight claim until **after** the adjudication of delinquency.  *J.B., supra* at 156-57, 106 A.3d at 95-96 (explaining juvenile could not raise weight of evidence challenge in his closing argument as it is matter of plain logic that claim that adjudication of delinquency is against weight of evidence presupposes court has **already** made final adjudication; closing arguments take place prior to final adjudication and are geared toward convincing trier of fact that evidence adduced at hearing failed to prove juvenile was delinquent of offenses charged; compare weight of evidence challenge, which assumes evidence was sufficient to adjudicate juvenile delinquent but requests court to reassess its adjudication to determine whether certain facts of record are so weighty that they warrant grant of new adjudicatory hearing).

optional post-dispositional motion; finding of waiver in juvenile proceedings has harsher consequences for juvenile than for similarly-situated criminal defendant because juvenile cannot raise ineffective assistance of counsel for waiver of weight claim under Post Conviction Relief Act ("PCRA"), as PCRA does not apply to juvenile proceedings; absent this avenue of collateral relief there is stronger reason to decline to impose waiver for non-preservation of weight claim; although juvenile raised challenge to weight of evidence in Rule 1925(b) statement, and court addressed issue in its Rule 1925(a) opinion, that fact does not cure deficiency as there likely will be times, under similar circumstances, where court will either review weight challenge in its Rule 1925(a) opinion in cursory fashion or fail to address claim at all; principles of fundamental justice and sound reason necessitate remand for filing of post-dispositional motion *nunc pro tunc* to raise weight of evidence claim). **See also Interest of J.G.**, 145 A.3d 1179 (Pa.Super. 2016) (declining to waive weight challenge where juvenile did not file post-dispositional motion and presented weight of evidence claim for first time in Rule 1925(b) statement; under **In re J.B.**, Court held remand was necessary to permit juvenile to file post-dispositional motion *nunc pro tunc* challenging weight of evidence).

Instantly, Appellant did not file a post-dispositional motion. Like the cases of **In re J.B.** and **Interest of J.G.**, Appellant raised his challenge to the weight of the evidence for the first time in his Rule 1925(b) statement.

The Juvenile court addressed Appellant's weight claim in in its Rule 1925(a) opinion in a cursory fashion after a detailed analysis concerning Appellant's challenge to the sufficiency of the evidence. Following prevailing precedent, we will now remand the case to give Appellant the opportunity to file a post-dispositional motion *nunc pro tunc* challenging the weight of the evidence. **See In re J.B., supra**; **Interest of J.G., supra**. Accordingly, we conclude the evidence presented in this case was sufficient to sustain the delinquency adjudication, but we remand for further proceedings limited to Appellant's challenge to the weight of the evidence.

Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/2/2017

| | |
|---|---|
| In re: | : **IN THE COURT OF COMMON PLEAS** |
| | : **OF BERKS COUNTY, PENNSYLVANIA** |
| **R.S.A., Jr.,** | : **JUVENILE DIVISION** |
| **a juvenile** | : |
| | : **No.: CP-06-JV- 931-2014 (45-J--J-2015) (Berks** |
| | : **County)** |
| | : **CR-51-JV-1000068-2015 (Phila. County)** |
| | : **Superior Court No.: 3114 EDA 2015** |
| | : **Delinquency** |

Keir Bradford-Grey, Defender, & Victor Rauch, Assistant Defender, for R.S.A., Jr.
Brian Kulp, Assistant District Attorney

## MEMORANDUM OPINION, GRIM, S.J.                    Dated:    May  _/0_ ,2016.

This matter came before the Juvenile Court as the result of charges of delinquency against R.S.A., Jr. ("Juvenile"), a thirteen year old minor, committed against a seven year old female victim. The case has been complicated by the fact that the offenses occurred in Berks County and the Juvenile now resides in Philadelphia County. There were three separate Judges involved in this matter.

### I.   Procedural History

The Juvenile Petition, filed January 28, 2015, alleged that on or about September 13, 2014, in Berks County, Pennsylvania, Juvenile "committed the acts of: Involuntary Deviate Sexual Intercourse (18 Pa.C.S.A. §3123(a)(7) and (b)), Sexual Assault (18 Pa.C.S.A. §3124.1), Indecent Assault (18 Pa.C.S.A. §3126(a)(7) and Indecent Exposure (18 Pa.C.S.A. §3127(a)). Juvenile filed a Motion to Bar Any Evidence from the Complainant on the basis that the Complainant had been subject to "taint." This motion was heard by the Honorable Scott Lash on February 24, 2015. On March 6, 2015, Judge Lash denied this motion. On April 27, 2015, the Motion of the Commonwealth to Permit the Admission of Evidence based on the Tender Years Exception was heard; it was granted on the record. The Adjudication hearing was

1

begun immediately thereafter, before the undersigned, and the hearing concluded on May 1, 2015. On May 1, 2015, the findings in the above-captioned matter were certified to Philadelphia County for final disposition because that is where the Juvenile resides. On June 2, 2015, the case was transferred to Philadelphia County. The deferred adjudicatory hearing was ultimately held before the Honorable Lori A. Dumas on September 18, 2015 and a final adjudication was entered. On October 9, 2015, the Defender Association of Philadelphia filed a Notice of Appeal to the Superior Court. Judge Dumas filed her opinion on January 21, 2016. On March 30, 2016, the Superior Court granted the Defenders Association an extension to file a concise statement of the errors complained of on appeal upon receipt of all the transcripts. On April 25, 2016, the undersigned received a copy of the concise statement, which asserts:

a. "The evidence was insufficient for a finding of guilt [sic] on all charges, insofar as the evidence of appellant's guilt was so unreliable and contradictory that it was incapable of supporting a verdict of guilty [sic] and thus was insufficient as a matter of law.

b. In the alternative, the verdict of guilt [sic] was against the weight of the evidence to such a degree as to shock the conscience.

c. The juvenile court erred in finding that there was no evidence of the complainant's statements being tainted by outside factors, and thus erred in denying the defense motion to explore those matters at a competency hearing.

d. The juvenile court should not have granted the Commonwealth's motion to admit out-of-court statements by the complaining witness ("tender years motion"), insofar as there was insufficient indicia of reliability of the statements.

2

e. The juvenile court erred in allowing the Commonwealth to present the testimony of Esteban Roche as a rebuttal witness, insofar as he was present during the testimony of his daughter in the Commonwealth's case-in-chief, when witnesses were ordered sequestered."

## II. Legal Analysis

Review of a juvenile court's disposition implicates the following principles, "The Juvenile Act grants broad discretion to the court when determining an appropriate disposition. We will not disturb a disposition absent a manifest abuse of discretion." *In re R.D.R.*, 876 A.2d 1009, 1013 (Pa.Super.2005) (internal citation omitted).

Juvenile first asserts that the evidence was insufficient for a finding of guilt [sic] on all charges. "A petition alleging that a child is delinquent must be disposed of in accordance with the Juvenile Act. Dispositions which are not set forth in the Act are beyond the power of the juvenile court." *In re J.J.*, 848 A.2d 1014, 1016–17 (Pa.Super.2004) (citation omitted). A juvenile court does not enter a guilty verdict. We found R.S.A., Jr. involved in the offenses charged, in that he committed the act of Involuntary Deviate Sexual Intercourse under 18 Pa.C.S.A. §3123(b) [but not under §3123(a)(7), which charge was dismissed]. We also found as a fact that he committed the act of Sexual Assault under §3124.1 and the act of Indecent Assault under § 3126(a)(7). We dismissed the charge of Indecent Exposure because we found it was not proven. Therefore, three of the charges were substantiated and two were not.

As for the sufficiency of the evidence claim, the standard of review is as follows:

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and

3

substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley,* 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied,* 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones,* 874 A.2d 108, 120–21 (Pa.Super.2005)).

"It matters not whether the appellant finds a witness' testimony lacking in credibility; such matters are solely within the province of the jury as trier of fact and, as such, will not be assailed on review by this court." *In Interest of J.R., 648 A.2d 28, 33 (Pa.Super.1994)(citations omitted).* "This standard is equally applicable in juvenile delinquency proceedings." *In re D.D.,* 597 A.2d 648 (Pa.Super. 1991)(en banc).

The record of the hearings held before the undersigned established the following facts: In March 2014, Juvenile, his mother, A.A. , father, C.A., Sr. , and his three siblings, J.A., D.A., and Ar.A. moved into the home of V.R., in Berks County. (Notes of Testimony, 5/1/15, p. 8-9). The family had moved up from North Carolina and, because they had no place to go, A.A.'s long-time friend, V.R. , let their family move in and use the third floor. In that same house were V.R., her daughter, N.R. her son, G.R. and her boyfriend, *Id.* at 9.

On September 13th of that year, there was a birthday party for N.R. at V.R.'s home. (Notes of Testimony, 4/27/15, pp. 9-10). It was during this party that the incident,

4

for which Juvenile was charged, was alleged to have happened. The victim in this case, A.R., was present at this party, as was the Juvenile. *Id.* at 11. During the party, the adults were on the first floor and all the children were on the second and third floors of V.R.'s home. *Id.* at 13. The children were playing hide and seek and most of the boys were on the third floor playing video games. *Id.* at 14. There were approximately 20 to 25 people at this party. *Id.*

About a month after this party, Melanie Johnson, A.R.'s first grade teacher, was walking in the elementary school hallway with her students on the way to their physical education class; Mrs. Johnson was waiting right outside the doors as the class went in. (Notes of Testimony, 5/1/15, Defendant's Exhibit 6, pp. 9-11). The gym teacher was inside the room; as the students were going into the gym, A.R. said, "Mrs. Johnson, can I tell you something?" The teacher asked her if it could wait and she said no. So the teacher asked "What is it?" A.R. stated, "Well, my cousin did something inappropriate to me." When she used that word – inappropriate – the teacher pulled her to the side and let the other students go into the gym. While Mrs. Johnson and A.R. were standing in the hallway, the teacher asked her, "Well, what do you mean by inappropriate?" A.R. replied, "Well, he put something in my mouth." The teacher asked what the "something" was and she replied that it was his butt. Mrs. Johnson asked A.R. if she told her mom or anyone else; A.R. said no. Mrs. Johnson asked A.R. if she would mind if they went to talk to Mrs. Houseknecht, the school guidance counselor. A.R. said that would be okay, so they walked to the guidance office. *Id.* at 11-12. This happened about 2:15 – 2:20 pm during the school day. *Id.* at 13. Mrs. Johnson explained that the word "inappropriate" was not an awfully big word for a first grader to use because they use "inappropriate choices and behavior" a lot when they are referring to things

5

at school. Mrs. Johnson said A.R. reads above grade level, so that is not an unusual word for her to use at her level. Mrs. Johnson asked A.R. what inappropriate meant because, for a first grader, that can mean a small thing to something more serious. *Id.* at 15-16. Mrs. Johnson reported that A.R. was embarrassed when she told her and was looking down a lot. A.R. was talking to her, so Mrs. Johnson could tell that she wanted to talk about it, but she was not quite comfortable talking. That is why the teacher asked A.R. if she would like to see the guidance counselor. *Id.* at 17. This conversation occurred on October 10, 2014. *Id.* at 18. At this point, A.R. had been in this teacher's class for over a month and a half and the teacher got to know her during this time. This was the first time A.R. appeared embarrassed to this teacher. *Id.* at 19.

The school guidance counselor, Deborah Houseknecht, spoke to A.R. for about 10 or 15 minutes before Mrs. Johnson left her office. (Notes of Testimony, 5/1/15, Defendant's Exhibit 6, pp. 21-23, 26). Mrs. Houseknecht asked A.R. what was going on. The child replied, "Something happened this summer that was inappropriate." She went on to say that "we were playing tag upstairs...or hide and seek or something." A.R. stated, "I was asked to go into the bathroom by my cousin and I said okay." The child told the guidance counselor, " I was asked to sit on the toilet, close my eyes, and open my mouth." Mrs. Houseknecht asked, "What happened next?" A.R. told her, "Well, the boy...I don't know what his name is. It's my cousin...He dropped his pants and he stuck his penis in my mouth." She told the guidance counselor that it wasn't for a long time and that she thought he was going to put gum in her mouth. Then as she left the bathroom, she was told by this boy not to tell anybody. She replied, "Okay." Mrs. Houseknecht asked her if this had ever happened to her before and she said no. *Id.* at 24-25. The guidance counselor told A.R. she would have to

6

tell her parents; she walked A.R. to gym class, kicked into gear, made her phone calls and filled out her reports. *Id.* at 25-26).

U.R. , the mother of A.R., and sister of V.R. , testified that, on the day she found out about this incident, when Mrs. Houseknecht called their home, she and her husband talked to A.R. shortly after she got off the school bus. (Notes of Testimony, 5/1/15, Defendant's Exhibit 6, pp. 35-38). The parents took A.R. to their room and locked the door. They asked her what happened to her; U.R. asked, "Did something happen to you?" A.R. told her that, when she was at her aunt's house on her niece N.R.'s 12th birthday, they were playing hide and go seek and Appellant asked her to go to the bathroom with him so that she could hide. Then he had told her to sit down on the toilet and close her eyes because he wanted to give her some candy. And then he proceeded to go and stick his tushie in her mouth and move it around. Then U.R. asked, "His tushie? What do you mean?" Tushie is the word the child used for her vaginal area. *Id.* at 52. A.R. said, "You know, the thing boys pee with." U.R. replied, "That's a boy's penis." U.R. asked her what happened next and she replied that he stopped and that he told her that if she says anything, she would get in trouble." *Id.* at 40-42. Afterward, A.R. went and spoke to her older sister, with whom she felt comfortable talking. *Id.* at 44.

A.R., the seven year old victim, clearly remembered, that at N.R.'s birthday party, the Juvenile was present. (Notes of Testimony, 5/1/15, pp. 25-26). She was in the second floor bathroom at the party and Juvenile came into the bathroom with her. *Id.* at 28. Juvenile told her to sit down by V.R.'s door and then said he was going to give her gum. Juvenile put his private part in her mouth instead. A.R. testified she had two names for that

7

private part, a peter and a penis. She knew it was his penis because she opened up her eyes and blinked once. A.R. felt disgusting inside when this happened. *Id.* at 30.

The Pennsylvania Consolidated Statutes define IDSI of a child as follows: **§ 3123. Involuntary deviate sexual intercourse:**

> **(b) Involuntary deviate sexual intercourse with a child.**—A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S.A. § 3123(b).

Deviate sexual intercourse is defined as "Sexual intercourse per os or per anus between human beings. **§ 3101.**

The evidence was sufficient to show that Juvenile engaged in deviate sexual intercourse with the victim. Juvenile deceived A.R., a seven year old girl, when, at a birthday party, he lured her into a bathroom under false pretenses, supposedly to help her hide, told her to close her eyes and open her mouth to receive some gum, and after she obeyed, put his penis in her mouth. A.R. saw his penis when she blinked. She knew this Juvenile as Shea Shea and identified him in court as the person who put his penis in her mouth.

We likewise conclude that the evidence was sufficient to show Juvenile committed the acts of Sexual Assault, §3124.1, and Indecent Assault § 3126(a)(7). A.R. did not consent to this act, nor could she, at the tender age of seven. She was tricked into opening her mouth to receive a treat.

We found A.R.'s testimony to be very credible. Any contradiction in the record is a result of the young victim not initially knowing what the proper name was for the body part

8

Juvenile put into her mouth. In testifying, she was repeatedly clear on which part of Juvenile's anatomy was put in her mouth. We are guided by the case of *In Interest of J.R., supra*, where the Superior Court, in a case with a four year old victim, held that "[T]he testimony of the victim, standing alone, is sufficient to convict in sex offense prosecutions." *Id.* at 33 (citations omitted). "Minor discrepancies in testimony pointed out by an appellant does not make the evidence insufficient where those discrepancies are not significant." *Id.*

The finding of involvement by the Juvenile in these acts does not shock the conscience of the court. The evidence was clear and weighty. The victim's testimony in court, which was believed by this court, was corroborated and consistent with the victim's earlier statements to her teacher, her guidance counselor and her mother. The minor discrepancies in terminology do not alter our findings.

As for Juvenile's issue concerning complainant's statements being tainted by outside factors, the Honorable Scott Lash held the hearing on that issue on February 24, 2015. Attached hereto, and marked as Exhibit A, are Judge Lash's Findings and Conclusions resolving the taint issue. We incorporate by reference, and adopt for the reasoning to address this allegation of error, the decision of Judge Lash dated March 6, 2015.

Juvenile next asserts that it was error to grant the Commonwealth's "Tender Years Motion." "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." *Commonwealth v. Kriner*, 915 A.2d 653, 657 (Pa.Super.2007) (quoting *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super.2002)) (quotation marks omitted). The Tender Years Exception to the hearsay rule provides in relevant part:

9

**§ 5985.1. Admissibility of certain statements**

**(a) General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> (2) the child either:
>
> > (i) testifies at the proceeding; or
> >
> > (ii) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a); *In re S.R.,* 920 A.2d 1262, 1264 (Pa.Super.2007).

However, the United States Supreme Court has determined that "*testimonial* statements are not subject to the tender years exception to the hearsay rule as that violates the Sixth Amendment right to confrontation." *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *Davis v. Washington,* --- U.S. ----, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)(*emphasis added*).

In the case of *Davis, supra,* and its companion case, *Hammon v. Indiana,* the Supreme Court more specifically addressed the distinction between testimonial and non-testimonial statements made during police interrogations. Writing for the *Davis* Court, Justice Scalia explained that "these cases require us to determine more precisely which police interrogations

10

produce testimony." *Id.*, at 2273. He then set forth a "primary purpose" test for determining whether statements were testimonial or non-testimonial:

> "Statements are non-testimonial when: made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when: the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

*Id.* at 2274 (emphasis added).

In *Davis, supra,* Justice Scalia noted that the *primary purpose of the statements*, as determined by an objective view of the circumstances, generally determines whether or not the statements are testimonial. 126 S.Ct. at 2273-74(*emphasis added*). Therefore, "the test is not how the *person questioned* views the interrogation, but what the purpose of the statement was as determined by an objective view of the circumstances. It makes more sense to ask whether an objective person, looking at the circumstances of the questioning, would consider the purpose of the statements as aiding the investigation. Was it a statement taken to address an immediate situation and see what is going on, like a mother's questioning of her child ... or was it a step taken in a police investigation after the action is over for purposes of aiding the investigation and potential prosecution..." *In re S.R.* at 1267.

In the case of *In re: S.R., supra,* the Superior Court reversed the adjudication of delinquency where it determined that the child victim's statements to a forensic interview specialist were testimonial, and thus, their admission violated the juvenile's right to confrontation. But, it upheld the admission of the victim's statements to her mother, as they were non-testimonial.

11

In the case at bar, the Commonwealth gave notice of its intent to present evidence of the statements the child victim made to the victim's teacher, guidance counselor, mother and forensic interviewer. It was for the court to determine if these conversations with the child victim were designed for prosecution, and were thus testimonial and inadmissible, or were non-testimonial and thus admissible.

We held the hearing on this motion just prior to the adjudication hearing in this case. (Notes of Testimony, 4/27/15, pp. 5-8). The parties had agreed that, if the victim testified and was subject to cross-examination, these statements would come in. *Id.* at 5. The child victim testified at the delinquency hearing, so there was an opportunity for cross examination and the juvenile's right of confrontation was not violated. Further, defense counsel for the Juvenile asked for these statements to be admitted because he sought to use them for impeachment purposes. *Id.* We concluded that the statements by the victim to: her teacher, her guidance counselor and her mother, were non-testimonial in nature and were spontaneous utterances on the part of the child. *Id.* at 6. Judge Lash previously ruled that there was no questioning by any of these adults that led to the victim into changing her statements.

And as we stated earlier, there was not an inconsistency in the victim's testimony about what body part was injected into her mouth. It was not clear to her, at the time of her initial statements, what formal name was used for the male anatomy at this location on a body. For her to first report it as a tushie is understandable because she referred to that location on her body as a tushie. We find that this discrepancy was a lack of knowledge on the part of the young victim of the exact name of this part of a male's body. She said it was the part a boy used to "pee pee." We found that the out-of-court statements were relevant and the timing, content and circumstances of the statements provided the court with sufficient indicia of their reliability.

12

Finally, Juvenile asserts that this court erred in allowing the Commonwealth to present the testimony of E·R. as a rebuttal witness, insofar as he was present during the testimony of his daughter in the Commonwealth's case-in-chief, when witnesses were ordered sequestered. We have reviewed the entire testimony of this witness in the record. (Notes of Testimony, 5/1/15, pp. 83-88). This witness was asked to remain in the courtroom with the victim because of her tender age. A parent needed to be present with the child at this time for support and her mother, who was going to testify, could not provide that for her. The victim's father was only asked two very limited questions concerning whether he and another adult were upstairs during the birthday party. The father did not testify to anything about which the victim testified. We did not consider this testimony in making our determination that Juvenile was involved in some of the offenses for which he was charged. Thus, the juvenile cannot show prejudice.

## III Conclusion

This Court respectfully suggests that its factual findings and legal conclusions should be upheld by the Superior Court.

BY THE COURT:

Arthur E. Grim, S.J.

13